KENNETH HEALER, a Minor, etc., *Appellee*, v. HENRY INKMAN et al., *Appellants*.

No. 18,115.

SYLLABUS BY THE COURT.

1. JURY — *Arbitrarily Disregarding Unimpeached Evidence.* While a jury is at liberty to disbelieve the uncontradicted testimony of a witness which is deemed to be unreasonable and untrue it is never justified in arbitrarily and capriciously disregarding unimpeached evidence.

2. ——— *Findings — Unsupported by Evidence — Inconsistent with Verdict.* Where undisputed testimony appears to have been arbitrarily disregarded by the jury and the special ques-

tions submitted unfairly answered, and where the special findings returned upon important issues are unsupported by the evidence and some of them are inconsistent with each' other and with the general verdict, a new trial should be granted.

Appeal from Leavenworth district court. Opinion filed April 12, 1913. Reversed.

*F. P. Fitzwilliam,* of Leavenworth, for appellant Henry Inkman.

*A. E. Dempsey,* of Leavenworth, for appellant Anton R. Hartwig.

*W. W. Hooper,* of Leavenworth, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: On the trial of this action the jury returned a verdict in favor of Kenneth Healer and against Henry Inkman and Anton R. Hartwig, awarding Healer damages in the sum of $5000 for personal injuries alleged to have been caused by them in negligently razing a house so that one of the walls fell on appellee. He resided with his grandmother, Isabella Healer, who acted as his next friend in this proceeding, and was about three and one-half years old when he was injured. Hartwig was the owner of a house and lot adjoining the premises of Mrs. Healer. It was a one-story structure, and being old he contracted with Henry Inkman to remove it and to build a new house on the same site. Inkman employed one Diehm to tear down the old house, and after he had been engaged on the work for several days and had removed the roof and ends of the building one of the walls fell towards the Healer premises, and Kenneth, who had just passed over the Hartwig premises before the wall fell, was caught under it, near the line between the two properties, and was very severely hurt. In the petition of Healer it was alleged that Hartwig and Inkman were

both negligent in employing Diehm, an "old, deaf and incompetent" man, to tear down the house, that both knew of the dangerous condition of the wall before it fell and were aware that persons were near the building and liable to be injured by the fall of an unsupported wall. Each answered by a general denial and an averment of contributory negligence, and Hartwig alleged that he dealt with Inkman as an independent contractor whereby Inkman was to raze and remove the old building and erect a new one, and that he, Hartwig, retained no direction or control of the work but that it was to be done by Inkman according to his own plans, with his own workmen and under his own direction. The main controversy in the case was the relationship that existed between Hartwig and Inkman, that is, whether Inkman was acting under the orders or control of Hartwig so that Hartwig was responsible for the negligence of Inkman, or whether Inkman was acting independently, free from any control of Hartwig, and was alone responsible for negligence in razing the house. The trial resulted in a verdict against both of them.

On this appeal it is contended by appellants that the jurors intentionally ignored testimony which was undisputed, that they purposely refused to make findings in harmony with the evidence fearing the effects of the findings on the general verdict which they intended to return, that their answers to special questions were not candid nor fair, and that some of the findings were not only in conflict with the testimony but also with each other and with the general verdict. Each appellant submitted a long list of special questions, and many in each list were substantially repetitions of those found in the other. Quite a number of them asked for statements of evidence instead of ultimate facts, and some were involved in form and included inquiries about several facts in a single question. There are good reasons to complain of the

actions and findings of the jury, and also of the conduct
of the trial.

As already stated, one of the vital questions was
whether Inkman undertook to do the work according to
his own methods without being subject to the orders
or control of Hartwig.   All of the testimony on the sub-
ject was to the effect that after several conversations
between owner and contractor they entered into an
agreement on May 13, 1910, by which Inkman was to
take the old house down in his own way and to furnish
the material and build a new house on the same site,
of the size and kind as one he had built in the neighbor-
hood the previous year, he to remove and have the ma-
terial in the old house but with the privilege of using
any part of the material of the old which was fit for
use in the new, and besides the old material he was to
receive the sum of $1100.   Both appellants testified in
regard to the contract and its terms, and yet in response
to a question whether a contract was made between the
parties for tearing down the old house and putting up
a new one in its place the jury first answered, in effect,
that no such contract was made, and finally, under the
stress of court pressure, they answered "No."   The
answer was contrary to the evidence of all the witnesses
who testified on the subject, as well as against the evi-
dence shown by the circumstances of the transaction
and the conduct of the parties themselves.   There was
evidence that Inkman was a capable carpenter and
builder and had been engaged in the business for about
twenty-five years, and although no evidence to the con-
trary was produced, the jury in answer to the question
whether he was a competent and experienced carpenter
and builder said "No," and in answer to a similar
question on the other list of questions submitted to the
jury they answered, "We do not know."   One answer
assumes that there was testimony upon which to make
a finding and the other that there was no testimony

upon which a finding on the subject could be made. Both answers indicated the purpose to arbitrarily reject competent and unimpeached testimony. While a jury is at liberty to disbelieve the testimony of a witness who has not been contradicted which they think is unworthy of belief, they are never authorized to arbitrarily and capriciously disregard uncontradicted and unimpeached testimony.

To one question, "Was Chris Dean [Diehm], the workman who was tearing down the building at the time plaintiff was injured, employed and paid by Henry Inkman and under his immediate orders and direction?" the jury answered, "We do not know." Upon a question as to whether Hartwig gave Diehm or Inkman any orders or directions with reference to the manner of removing the old building, they answered, "We do not know." There was testimony on these important questions and upon which a direct answer should have been given.

To another question, "Did Anton Hartwig employ Chris Dean [Diehm] to tear down the old building?" the answer was, "Yes; indirectly." A question relating to the same subject was, "Did Henry Inkman [the contractor] proceed in his own way and according to his own plans and without any direction from the defendant Anton R. Hartwig, in removing the old building from the premises?" and the answer to that was, "No." Another question was, "Did Inkman remove the building in his own way and use his own means for the purpose, being accountable only for final performance?" and this was answered, "We do not believe any contract was made at time stated by defendants, and Inkman could have proceeded in his own way either with or without instructions from Hartwig."

It appears from the many inconsistencies in the findings and the lack of support of the same in the testimony that a fair and intelligent consideration of the case by a jury has not been had. This is indicated also,

to some extent, by a very unusual discussion as to the evidence and findings and also as to the law and procedure which took place near the end of the trial, and in which judge, jurors and counsel participated.    When the court proposed to send the jury out to make fuller and more definite answers to special questions a number of the jurors argued with the court as to the propriety of such a course and seemed to be unwilling to follow the suggestions and instructions given to them by the court.    In their colloquy with the court and counsel it appeared that facts not in evidence were given consideration and that the reluctance of jurors to make special findings in accordance with the testimony was the apprehension that the findings, if made, would be inconsistent with the general verdict which they desired to return.

On the whole it appears that a fair trial of some of the important issues in the case has not been had. The judgment will, therefore, be reversed and the cause remanded for a new trial.