Harry E. Ankeney, Appellant, v. Clyde E. Brenton, Appellee.

No. 40878.

September 29, 1931.

Rehearing Denied April 8, 1932.

Howard L. Bump, Salinger, Reynolds & Myers, and White & Clarke, for appellant.

Brammer, Brody, Charlton & Parker and Russell K. Craft, for appellee.

KINDIG, J.—Harry E. Ankeney, the plaintiff-appellant, a man now about seventy-two years old, previous to the commencement of this action had engaged in the Linseed Oil business for approximately fifty years. This business was carried on by the appellant through many different organizations. However, in 1912, he assisted in organizing as an Iowa corporation, the Ankeney Linseed Manufacturing Company. Associated with him in that corporation were a Mr. Parrott and a Mr. Sears. Thereafter, in 1916, Mr. Ralph Bolton became a stockholder in the corporation and bought the interests of Parrott and Sears.

The Ankeney Linseed Manufacturing Company in all issued 750 shares of its capital stock, the par value of which was $100 per share. These shares, after said sale by Parrott and Sears, were held by the following persons in the amounts set opposite their names: Ralph Bolton, 405 shares; Grace Dawes, 7½ shares; Ashton Clemens, 75 shares, and appellant, 262½ shares. Clemens later died and the corporation itself, on May 22, 1926, purchased from his estate the 75 shares of stock formerly owned by him, for $135 per share. After this purchase, those 75 shares of stock were held in the corporation as treasury stock.

On March 15, 1929, Ralph Bolton died, and the Des Moines Savings Bank & Trust Company and Mrs. Bolton, the surviving wife, became co-executors of the estate. Clyde E. Brenton, the defendant and appellee, at that time was the president of the Des Moines Savings Bank & Trust Company, an executor aforesaid. Up to this time, appellant was neither a depositor in nor a customer of the Des Moines Savings Bank & Trust Company. Nor until then did the appellant have any business relationships with the Iowa National Bank, a sister institution of the Des Moines Savings Bank & Trust Company. Appellee then was also president of the Iowa National Bank.

Before this time, appellant and appellee had never had personal business dealings with each other. They were acquainted as fellow Rotarians, but had no other social relationships. When and because the Des Moines Savings Bank & Trust Company was thus appointed an executor of the Bolton Estate, appellant called upon appellee in reference to the Ankeney Linseed Manufacturing Company business. During the conferences which followed between appellant and appellee, the future of the Ankeney Linseed Manufacturing Company was discussed. Among the matters thus considered was that of borrowing money, and, on March 18, 1929, the appellee, through the Iowa National Bank aforesaid, loaned the Ankeney Linseed Manufacturing Company $60,000. Warehouse receipts were given as security, and the Ankeney Company opened a checking account with the Iowa National Bank. Then between the 20 and 25 of March, the appellant and appellee had daily conferences concerning the affairs of the Ankeney Company. As a result of these discussions, appellant, on March 25th, executed to appellee the following written option:

"Whereas, the undersigned, Harry E. Ankeney (appellant) is the owner of Two Hundred sixty-two and one-half (262½) shares of the stock of the Ankeney Linseed Manufacturing Company of Des Moines, Iowa; in consideration of the sum of One Dollar ($1.00) in hand paid by Clyde E. Brenton (appellee), he hereby gives to the said Clyde E. Brenton the option to purchase said 262½ shares of stock, until May 1, 1929, at the price of One Hundred Thirty-five Dollars ($135.00) per share; acceptance of this option to be made to the Iowa National Bank on or before May 1, 1929, and payable within ten (10) days thereafter, with interest at seven (7) per cent from May 1, 1929, until the date of payment.

"Signed this 25th day of March, 1929.

"Harry E. Ankeney."

Appellant received from appellee a copy of the foregoing option at the time the original instrument was executed. In accordance with the option, appellee elected to buy the stock April 1, 1929. Upon that day appellant delivered the stock to appellee and the latter paid to him the full consideration named in the option.

Soon thereafter, appellant, although no longer a stockholder, was hired to manage the production and sale of products for the Ankeney Linseed Manufacturing Company at a salary of $500 per month. That employment continued until the following August, when the appellee and the Bolton Estate sold their interests to the. Spencer, Kellogg & Sons Company. Before appellee and the Bolton Estate thus sold their interests to the Spencer, Kellogg Company, appellant upon different occasions, in co-operation with others, attempted to buy the plant of the Ankeney Company, but an agreement could not be reached.

On the basis, however, that he was defrauded by appellee through the aforesaid stock sale, appellant, August 20, 1930, commenced the present action. It is stated by appellant that during the said conversations before the option had been executed, he made known to appellee his desire to purchase the Bolton stock. Appellee, appellant contends, acquiesced in that plan and encouraged him to purchase such stock. At no time, appellant declares, did he ever express a desire to sell his own stock. Hence, appellant maintains that he was forced to sell his stock through appellee's deceit. Fraud, it appears, is predicated upon the thought that appellee, through a scheme, induced the appellant to sign the option under a purported plan to thereby fix the price on the Bolton stock, in order that appellant might finally purchase it. To put the thought differently, appellant claims that he signed the option, not for the purpose of selling his stock to appellee, but rather under the latter's fraudulent pretension that by executing the option a price would finally be fixed upon the Bolton stock whereby appellant could buy the same from the Bolton Estate. Damages arise, appellant says, because the stock at the time in question was worth a great deal more than $135 per share.

Because the district court decided there is no jury question involved, the appellant appeals. Our attention now will be directed to the propositions argued.

I. The appellant pleaded fraud as the basis for his right to recover from the appellee. Therefore, the burden of proof is upon appellant to sustain that allegation by sufficient evidence. Under the circumstances, fraud will not be presumed. Smith v. Smith, 206 Iowa 606 (local citation, 610) ; Stephenson & Peterson v. Svenson, 187 Iowa, 802; Blasier v. Doyle, 197 Iowa

652; Wing v. Credit Guide Company, 181 Iowa 370. Has appellant met the test? This is the first question.

A review of the record discloses that the evidence on this proposition is exceedingly close. There is no clear showing of fraud under the many facts and circumstances involved. No relationship of principal and agent existed between appellant and appellee, nor was there a confidential relationship between the parties. The theory upon which this case is decided makes it unnecessary for us to set forth an extensive statement of the evidence at this place. Under the circumstances, an elaborate discussion of the facts is not essential.

Two general claims, as before said, are made by appellant: First, he contends that appellee, through deceit, received an option to buy the stock when none was intended; and, second, he asserts that thereby appellee obtained an unconscionable bargain.

Assuming, however, without deciding, that the reasonable value of the stock, when the option was signed, still remains a jury question, and likewise conceding, without determining, that it is for the jury to say whether appellee, through fraudulently pretending to purchase the Bolton stock for appellant, obtained his signature to the optional agreement, yet this does not mean under the record, as hereinafter will be shown, that the district court erroneously directed a verdict.

II. Soon after he signed the option agreement, appellant learned of appellee's alleged fraud. So, he took a copy of the option contract to his attorney, John Gillespie. Some uncertainty exists whether appellant consulted Mr. Gillespie on Thursday, March 28, or Saturday, March 30. In any event, Mr. Gillespie was consulted by appellant for the purpose of avoiding the optional agreement.

Upon this occasion, appellant knew of appellee's alleged fraud and understood that the instrument executed by him was an option under which appellee might buy the stock. Likewise, on the same Saturday, appellant told appellee that he procured the option through fraud. Up to that time appellee had not exercised his right to buy the stock under the option. Notwithstanding this, appellant did not withdraw the optional offer. The only consideration named in the option agreement is one dollar. Yet the record expressly shows that such consideration was not paid. Not only that, but under the facts and circum-

stances revealed by the appellant, it is apparent that there was no consideration of any kind supporting a contract to sell this stock to appellee. Resultantly the statutory presumption arising out of the written document is overcome. Without a consideration, the optional agreement could be revoked by appellant at any time. Jester v. Gray, 188 Iowa 1249; Barnett v. Lovejoy, 193 Iowa 678 (local citation, 682-3); Wilson v. Holub, 202 Iowa 549 (local citation, 553). We expressed the thought by the following language in the Jester case, first above cited:

"An option without consideration is a mere offer, and is not binding until its acceptance. It necessarily follows that it may be withdrawn before its acceptance."

Although the option agreement was revocable because given without consideration, yet appellant did not withdraw it, but let the instrument remain in effect, and when appellee elected to buy the stock, appellant accepted the offer and made delivery thereof. During the consultation with Mr. Gillespie, appellant's son-in-law was called in order that conference might be had with him. These men considered the value, the general circumstances surrounding the business, and all the facts and conditions relating thereto. After such careful consideration, it was the unanimous opinion of Mr. Gillespie and appellant's son-in-law that the option should stand and appellee be permitted to buy the stock. Accordingly, when, on April 1, appellee signified his desire to exercise the option, appellant, through his attorney, consented. Throughout every step of the proceedings, at least during and after Saturday preceding April 1, appellant was fully advised by his attorney. Even if appellant's negligence in not revoking the option is not enough to defeat his cause (a point which we do not decide), yet under the circumstances the acceptance of appellee's offer to buy, and the transfer of the stock accordingly, bars a recovery. Whatever contract appellee had with appellant remained wholly executory until the offer to buy was accepted, consideration paid, and the stock delivered. Until that time there had been no execution. If there were fraud, as alleged by appellant, he was not under obligation to perform. Moreover, a rescission of the contract would have worked no harm or hardship upon appellant. He, under the circumstances, had no bargain to preserve, for according to appellant he did

not want to sell his stock and did not agree to do so. The contract price, appellant claims, was unconscionably low. Then, because of that, no damage or harm could have come to appellant if he had rescinded and otherwise refused to perform the wholly executory contract. When, on April 1, appellee signified his intention of exercising the option and buying the stock, appellant knew all the details of the alleged fraud. Also appellant at that time was informed concerning the value of the stock. Furthermore, he was fully advised by very competent counsel. Therefore, under the record, appellant by performing ratified and confirmed the original alleged fraud-induced option agreement and waived all claim for damages by reason of the so-called deceit. 12 Ruling Case Law, sec. 159, pages 413-14; Scott v. Simons, 181 Iowa 1037; Bean v. Bickley, 187 Iowa 689; Hagen v. Barry, 194 Iowa 1207; Eckstein v. Storck, 199 Iowa 1375; Loots v. Knoke, 209 Iowa 447.

Quoted excerpts from the foregoing cases will demonstrate the thought. In Bean v. Bickley (187 Iowa 689), supra, reading on page 709, we said:

"This rule (the one above stated) is applied where a false representation obtains a contract, the fraud is discovered while such contract is wholly executory, and the defrauded party then elects to carry out the contract; and appellant urges that rule (the one above-named) in his behalf."

Consistently, we again said in Eckstein v. Storck (199 Iowa 1375), supra, reading on page 1379:

"If plaintiff discovered the fraud in time to save himself by refusal of performance, he is not deemed to have suffered damage in advance of such performance. This question also was before us in Bean v. Bickley, above, * * *."

Whether or not this rule would apply in a case where under the contract the defrauded party desires to protect his bargain, we do not now decide or indicate. But see Bean v. Bickley (187 Iowa 689), supra.

It is enough to conclude that in the case at bar the appellant waived his damages because when the option contract was wholly executory he permitted appellee to exercise the option and buy the stock. A rescission on appellant's part would have

saved the alleged damage without any harm or loss of bargain. See also 27 Corpus Juris, 24; Simon v. Goodyear Metallic Rubber Shoe Company, 105 Fed. 573; Browning v. Rodman, 111 Atl. 877 (Pa.).

III. Appellant, however, argues at this juncture that the waiver related only to the right of rescission and did not bar a suit in damages. With this proposition we do not agree.

Of course, if the contract had been wholly performed before appellant learned of the alleged fraud, there could have been a recovery for damages thereafter. Also if the contract were partly performed and appellant could not retreat without injury, he could have waived rescission and proceeded to recover damages. See Bean v. Bickley (187 Iowa 689), supra. Under the facts before us, however, that rule does not apply, as seen by the authorities cited in the division above. Especially see Scott v. Simons (181 Iowa 1037), supra; Eckstein v. Storck, 199 Iowa 1375, supra. This proposition was considered by the Pennsylvania Supreme Court in Browning v. Rodman (111 Atl. 877), supra. While discussing the point, the Pennsylvania Court said:

"A purchaser who consummates the sale after discovering the fraud cannot thereafter maintain an action of deceit. *These principles are not in conflict with the doctrine that the party defrauded has his election to repudiate the contract or to affirm it and sue in deceit.* (The italics are ours). The question of waiver, however, is largely one of intent. Hence acts done in affirmance of the contract can amount to a waiver of the fraud *only* (italics are ours) where they are done with full knowledge of the fraud and of all material facts, and with the intention clearly manifested of abiding by the contract."

So, the cases cited by appellant are not in point because they do not relate to the facts and circumstances here presented. See Dilenbeck v. Davis, 186 Iowa 30; Hogan v. Ross, 200 Iowa 519; Reinertson v. Struthers, 201 Iowa 1186; Van Vliet Fletcher Auto. Co. v. Crowell, 171 Iowa 64, and similar cases. Those authorities have to do with facts where the one defrauded had a right to waive rescission, perform, and sue for damages. The defrauded party in those cases did not voluntarily bring upon himself the injury for which damage was claimed. Because of that circumstance, as already has been stated, the waiver of the

rescission does not include a waiver of the damages. Here, however, the appellant under the law could not waive the rescission and perform the executory contract without waiving the damages. Otherwise, the law would permit him to recover for a purely self-inflicted injury. Such self-inflicted injury cannot be the basis for a recovery. That principle furnishes the distinction between the two lines of cases. Scott v. Simons (181 Iowa 1037), supra; Bean v. Bickley (187 Iowa 689), supra; Eckstein v. Storck (199 Iowa 1375), supra; Hagen v. Barry (194 Iowa 1207), supra; Loots v. Knoke, 209 Iowa, 447, supra; Browning v. Rodman (111 Atl. 877), supra.

IV. An argument also is made by appellant to the effect that whether or not he waived his right to sue for damages is a jury question.

"Whether there has been a waiver is generally a question of fact and the sufficiency of the evidence relating thereto is for the jury." 27 Ruling Case Law, p. 912, par. 7.

Basing his argument upon the foregoing general principle, appellant concludes that waiver is a fact question, and cites the following, among other authorities: Bottorff v. Lewis, 121 Iowa 27; Van Drimmelen v. Converse, 190 Iowa 1350; Ford v. Ott, 186 Iowa 820. Waiver being a fact question, appellant asserts that in law cases the jury and not the court shall determine the ultimate question. Consequently appellant claims that the district court should not have directed a verdict in appellee's favor but should have submitted the question of waiver to the jury.

Generally speaking, of course, fact questions in law cases are for the jury to determine, but if, in a specific case, the record is clear concerning a particular fact, a verdict may be directed by the trial court. Ruling Case Law, as well as the courts, recognize this principle when applied to the question of waiver. After stating the text above quoted, the author of said encyclopedia says:

"Where, however, the facts and circumstances relating to the subject are admitted or clearly established, waiver becomes a question of law." 27 R. C. L. 912, Par. 7.

To the same effect see Swedish American Bank of Min-

neapolis v. Koebernick, 117 N. W. 1020 (Wis.). There it is said, reading on page 1023:

"* * * And a person who does some positive act which, according to its natural import, is so inconsistent with the enforcement of the right in his favor as to induce a reasonable belief that such right has been dispensed with will be deemed to have waived it. * * * And, where the facts and circumstances relating to the subject are admitted, or clearly established, *waiver becomes a question of law.*" (The italics are ours).

Accordingly in the case at bar, appellant knew of appellee's alleged fraud when the stock sale was completed. Upon that occasion he understood the alleged loss to be suffered. By refusing to rescind, under those circumstances, and inflicting upon himself the loss now complained of, appellant waived his right to sue for damages. Had appellant, on the occasion of performing, announced to appellee that he intended thus to perform and sue for damages, he nevertheless would have waived the right so to sue. Simon v. Goodyear Metallic Rubber Shoe Co. (105 Fed. 573), supra; Wells v. Holley (Tenn.), 235 S. W. 430; Thrower v. Brownlee, 12 S. W. (2nd), 184 (Tex.); Van Scherpe v. Ulberg, 206 N. W. 323 (Mich.).

Through the announcement contemplated, the appellant would not intend to waive his right to sue. Nevertheless, according to the authorities, appellant, by inflicting upon himself the damages under consideration, a waiver results notwithstanding the intention. Perhaps, after learning of the fraud, he did not know what legal remedy to pursue to obtain the necessary relief, but such knowledge could be obtained from an attorney. Laymen frequently do not know what particular remedy to follow in order to avoid a fraudulently induced contract. This, however, under the circumstances of this case, does not change the applicable rules. These laymen understand that they may consult practicing attorneys who can give them required information. Appellant did consult an attorney and was advised. There is no claim that appellee prevented appellant, through fraud or otherwise, from fully and freely consulting with his counsel. Nor is it contended that appellee gave false information or advice during that period of the transactions. Duress is neither pleaded nor proven. It is immaterial under those conditions

what were the controlling factors which induced the attorney to advise appellant to perform the option. Necessarily, then, under the record, the district court was fully justified in directing a verdict in appellee's favor.

V. Regardless of the foregoing, appellant asserts that he should have a new trial because at the time the district court ruled on the motion to direct a verdict there was a motion pending to strike portions of appellee's answer. A more detailed statement of the record at this place will enlighten the reader.

After the trial had proceeded to the final day, appellee filed an amendment to his answer further pleading the waiver and ratification of the fraud. Whereupon appellant filed a motion to strike portions of defendant's amended answer relating to acquiescence; waiver, and ratification. While appellant's motion was thus pending, appellee made his motion for a directed verdict. Before ruling on the last-named motion, the district court suggested that it preferred at the same time to consider appellant's motion to strike. Complaint of this is made by appellant on the theory that, had he known the trial court would overrule his motion to strike portions of appellee's answer, he would have filed a reply to such answer. Manifestly, under the circumstances, the point is not well taken. When both motions were pending, the district court announced its preference above explained and no objection at that time was made by appellant, nor did he take exception to the court's action. Previous to appellee's amendment, appellant had attacked the former's answer with a motion to strike therefrom allegations of acquiescence, waiver, ratification, etc. This motion was overruled by the district court eighteen days before the trial. During the interval, and until appellee's amended answer was filed, nothing was said by appellant about filing a reply in order to avoid the charge of acquiescence, waiver, and ratification. At the time the district court announced its desire to consider both motions at once, as above explained, appellant expressed no intention or desire to file a reply. Immediately before the district court ruled on appellee's motion for a directed verdict, the appellant made the following statement in open court: "We have taken fully the testimony of all persons who, it is believed, can shed any light on plaintiff's case."

Under these facts, it is plain that appellant waived his right

to have the district court rule on the aforesaid motion to strike before a ruling on the motion to direct a verdict.

■ VI. Objection also is made by the appellant because the district court did not admit into the record certain evidence relating to negotiations for the sale by appellee of the Ankeney Linseed Oil Company properties. That evidence consists of a series of letters between appellee and the Archer Daniels Midland Company. Likewise the rejected evidence included letters between appellee and the Spencer, Kellogg & Sons Company. Appellee did not sell the corporate property to the Archer Daniels Midland Company, but did finally sell it to the Spencer, Kellogg & Sons Company. The purpose of offering these letters, appellant contends, was to show that appellee intended to defraud appellant by obtaining the corporate stock from him and then selling the same to a competing company for a high price.

If the evidence were material for the purpose of showing deceit on Brenton's part, the appellant was not prejudiced because, when ruling, the district court assumed that fraud had been shown, but directed the verdict for the reason that the same had been waived. So, too, in our own discussion in this opinion, we have assumed fraud. Moreover, the evidence does disclose, without the letters concerned, that appellee negotiated for the sale of this property and finally did sell the same to the Spencer, Kellogg & Sons Company. Appellant knew appellee was thus negotiating when he was consulting with his attorney before the option agreement became effective and the stock was finally sold to appellee. All the letters rejected by the district court were written, it seems, after the sale was finally consummated, the stock delivered, and purchase price received. Because of the circumstances thus disclosed, it is apparent that no prejudice resulted from the ruling.

■ VII. Again exception is taken by appellant because the trial court did not admit into the record a many-paged audit report of W. C. Herrop. Such audit was made from the books of the Ankeney Company by Mr. Herrop, an accountant. Before the audit was offered, the witness testified to all material portions thereof. Only part of the audit report was excluded by the district court. Exhibit A thereof was admitted. This Exhibit was "designated as balance sheets of the company as of date March 31, 1929." Simplification of the record by classify-

ing the figures could be the only purpose of admitting this audit. As before stated, the books and records of the company and the testimony of the accountant were admitted so far as material. Consequently appellant was not prejudiced because of the district court's ruling here.

VIII. Further objection is made by appellant because the district court refused to receive evidence concerning conversations between appellant and his attorney, Mr. Gillespie, and his son-in-law, Mr. Hargrove.

These conversations were not held in the presence of appellee. At most the evidence offered was very largely in the nature of self-serving declarations. It is not claimed that appellee's fraud in any way penetrated into the secret conferences held by appellant and his attorney. Apparently this rejected evidence related to the reasons why appellant's attorney advised him to accept appellee's offer and sell the stock. Generally speaking, these conversations related to the following: First, the fact that appellant and Bolton, during his lifetime, had procured loans through warehouse receipts which did not represent goods stored; second, that the preliminary negotiations between appellant and appellee apparently had for their purpose the procuring of Mr. Bolton's stock through fraud; third, that appellee was an aggressive, determined man, unscrupulous in his pursuit for money, and would likely make the situation unpleasant for appellant should he rescind the option and possibly cause a depreciation of the corporation's stock; and, fourth, that appellant is an aged man and therefore could not cope with the hazards of unpleasant business relationships.

Obviously those private discussions between appellant and his advisors were quite immaterial in the trial of this case. Appellant was fully informed and obtained competent and painstaking advice. The many discussions leading up to that advice were quite immaterial under the circumstances. No prejudice appears, therefore, because the district court did not admit into the evidence these conversations.

Other matters were argued, but they are not sufficient to change the result of this litigation. A detailed discussion thereof would merely unduly prolong the opinion.

Wherefore, the judgment of the district court should be, and hereby is, affirmed.—Affirmed.

370

FAVILLE, C. J., and EVANS, STEVENS, DE GRAFF, MORLING, WAGNER, and GRIMM, JJ., concur.

ALBERT, J., took no part.