No. 30,292.

Trustees of the Baker University, *Appellant*, v. Thomas H. Farrar, Administrator of the Estate of Resin Clark, Deceased, *Appellee*.

(8 P. 2d 343.)

Opinion filed
'March 5, 1932.

*Robert Stone, James A. McClure, Robert L. Webb, Beryl R. Johnson, Ralph W. Oman,* all of Topeka, *Carroll Walker,* of Frankfort, *Leslie J. Lyons* and *Donald E. Lyons,* both of Kansas City, Mo., for the appellant.

*W. J. Gregg* and *E. M. Gregg,* both of Frankfort, for the appellee.

The opinion of the court was delivered by

Sloan, J.: This was an action to recover on a promissory note. The sole defense was a denial of execution.

Baker university, a Kansas corporation, maintains a college of liberal arts and sciences at Baldwin, Kan., and is supported largely by the income from an endowment fund established by the university from contributions made largely through the Methodist church. In the spring of 1929 it began a campaign for contributions to this fund and received many subscriptions in the same form as the one here under consideration. W. N. Tisdale and the Rev. C. A. Waters were employed by the university for the purpose of carrying on the campaign. Tisdale was in general charge of the movement, and Waters was in charge of the Manhattan district of the Kansas conference, which included Marshall county. They were furnished

by the university with a list of persons upon whom they were to call in the interest of the university. On the list was Resin Clark, who lived in Frankfort and was a member of the Methodist church. On April 18, 1929, Waters went to Frankfort, and, among others, met Clark in the home of his daughter, Mrs. Sheppard. On this occasion he was accompanied by the Rev. Mr. Westerman, of Wamego, and the Rev. Mr. Dussier, the pastor at Frankfort. During the visit with Clark they apprised him that a campaign was being made for the university endowment fund, and that Waters was in the community in the interest of that fund. Clark talked with them about ten minutes and said that he was favorably impressed with the needs of Baker university, and expected to do his part. On several other occasions Waters met Clark and talked to him concerning his contribution. He expressed himself as expecting to make a contribution to the university. On July 7, 1929, Clark suffered a stroke of paralysis affecting his left side. Waters, accompanied by Tisdale, returned to Frankfort on July 9. They learned that Clark was ill and called at the home of Mrs. Sheppard, where he was then staying, and asked if they might see him. She told them that her father was sick and she would inquire if he would talk to them. After going to her father's room she returned and led them into the room. Waters introduced Tisdale to Clark. Mrs. Sheppard brought a chair into the room and did not return, except for an instant to inquire if her father wished a drink. Clark raised himself up in the bed. When asked what he had decided in regard to a contribution to the endowment fund of Baker university he replied that he had decided to help out in the matter. Tisdale inquired if his subscription would be $5,000 or $10,000. He replied: "I will not do that." After some further conversation he said that he had decided to put Baker in his will for $4,500. When the estate note was explained to him, and the preference of the university to the use of such note in place of a will, he decided to give the note. The note was filled out for $4,500, and read to Clark. It was then handed to him for his signature, together with a fountain pen. Clark attempted to write his name upon the blank line provided for that purpose. His hand was unsteady and shaky, and, turning to Waters, he said he was afraid he could not write his name. It was then suggested that he make his mark. The note was handed to Tisdale by Clark with the request that he write his name. This was done, and the note returned to Clark, together

with the pen, and he made his mark. Waters signed the note as a witness. The note, in due course, was forwarded to the treasurer of Baker university, who entered it upon the records and books of the university, and it became a part of the endowment. Clark died on July 29, and in due course the note was filed as a claim against the estate. The total appraised value of his estate was $77,501.66. It was also shown on the part of the appellant that Clark was a member of the Methodist church; that he talked of making a gift to the local church to be used in building an addition to the church for Sunday school purposes as a memorial to his wife, who, in her lifetime, was a member of the church. The gift was refused because it was insufficient to pay for the addition as planned.

The evidence on the part of the appellee was to the effect that Clark had never been known, before the incident involved in this case, to sign any paper by mark; that he had the full use of his right hand, and that he signed a check on July 14, and another on July 15, and had signed a number of checks in June. These checks, after identification of the signature, were admitted in evidence. An enlarged photographic copy of his signature on other instruments, and on the instrument in question were adduced in evidence for examination by the jury. His children, who visited with him after the incident in question, testified that he did not mention the signing of a note or the making of a gift to Baker university; that he did mention that he had some time before made gifts to Bethany hospital.

Mrs. Sheppard testified that while Waters and Tisdale were in the room with her father she heard him say, "No, I have changed my mind. I am not going to do it."

There is some discrepancy between the testimony of Mrs. Sheppard and the two ministers as to what they said to her when coming to and leaving the house. On this evidence the jury returned a general verdict in favor of the defendant.

The appellant contends, and it is ably argued, that the trial court erred in overruling the appellant's motion for a directed verdict.

The issue in this case is clear cut. The appellee denied the execution of the note. This placed the burden of proof on the appellant to establish to the satisfaction of the jury, by a preponderance of the evidence, the execution of the note. There does not appear to be any dispute as to the delivery of the note, if it was signed by

the deceased. Consequently the issue is narrowed to the single question, Did the deceased make the mark on the note intending it for his signature? The appellant earnestly contends, since there was no direct contradiction in the testimony as to the signing of the note, that the trial court was bound to accept this testimony as true and render judgment for the appellant.

The appellant contends that the following decisions of this court decide this issue: *Hillis v. National Bank,* 54 Kan. 421, 38 Pac. 565; *Shale v. Bank,* 82 Kan. 649, 109 Pac. 408; *Sundgren v. Stevens,* 86 Kan. 154, 119 Pac. 322; *Healer v. Inkman,* 89 Kan. 398, 131 Pac. 611. In *Hillis v. National Bank,* supra, the court held that where all the material facts in the case are uncontradicted the plaintiff is entitled to a verdict thereon. In *Shale v. Bank,* supra, the facts were undisputed and it was not error to direct a verdict. In *Sundgren v. Stevens,* supra, the jury arbitrarily disregarded uncontradicted testimony, and the court set the verdict aside. In *Healer v. Inkman,* supra, the jury appeared to have arbitrarily disregarded undisputed testimony and unfairly answered special questions, and a new trial was ordered. The court held, however, that the jury is at liberty to disbelieve the uncontradicted testimony of a witness which it deemed to be unreasonable. It will be observed from these cases that this court is only warranted in directing a verdict where there is no disputed fact when the testimony is all considered, or setting aside a verdict supported by evidence where the jury appears to have disregarded its duty and acted arbitrarily and capriciously.

In *Fenn v. Kansas Gas & Electric Co.,* 118 Kan. 131, 136, 234 Pac. 77, this court said:

". . . One trouble with this and other features of defendant's argument is the assumption that what its witnesses testified to must be accepted by this court as true, which, of course, is altogether incorrect. (*Cobe v. Coughlin,* 83 Kan. 522, 112 Pac. 115; *Fisk v. Neptune,* 96 Kan. 16, 149 Pac. 692; *Wyrick v. Street Railway Co.,* 100 Kan. 122, 129, 130, 163 Pac. 1059; *The State, ex rel., v. Woods,* 102 Kan. 499, 170 Pac. 986; *The State v. Luft,* 104 Kan. 353, 179 Pac. 553.) In *Swartz v. Levin,* 108 Kan. 224, 194 Pac. 646, where it was urged that because certain testimony of defendants was not contradicted it should be considered as establishing the facts, this court held that the trier of the facts was not bound to believe the defendants' evidence even in the absence of express contradiction on rebuttal. . . ."

This rule has been followed in the following cases: *Hausam v. Poehler,* 120 Kan. 119, 242 Pac. 449; *Reeves v. Sroade,* 124 Kan. 423, 260 Pac. 609; *Young v. Lucas,* 132 Kan. 484, 296 Pac. 362.

The jury might very well have accepted the testimony of the two witnesses with reference to the execution of the note, but it was not bound to do so. It had a right to take into consideration, in weighing the testimony of these witnesses; their demeanor on the witness stand, the manner in which they conducted themselves at the time it was claimed the note was executed, the conversations had with Mrs. Sheppard, the condition of Clark, and his probable ability to execute the note by signing his name. The trial court had the opportunity to observe the witnesses on the stand, and there may have been something which this court cannot see in the printed record which fully justified it in distrusting their veracity. Uncontradicted testimony is not necessarily truthful. The jury was not compelled to believe it, and the trial court approved the verdict. This court will not set aside a verdict merely because it is in conflict with oral testimony which no witness contradicted. We cannot say that the evidence of the two witnesses is not contradicted. They do not agree with Mrs. Sheppard as to their conduct immediately before and after the claimed execution of the note, and their evidence does not agree with Mrs. Sheppard's statement as to what her father said in their presence. The jury had for consideration the enlarged photograph of the alleged signature from which it could draw its own conclusion as to whether the mark was made by a shaky hand. We hold that the court did not err in overruling appellant's motion for an instructed verdict.

It is next contended that the trial court erred in permitting the children of the deceased to testify that they had talked to their father on numerous occasions, and he had at no time informed or disclosed to them that he had made a donation to Baker university, or executed the note in question. This testimony was admitted under questions so framed that the competency of the witness to testify was not objected to; the objection was to the competency of the evidence. The appellant, in the first instance, offered in evidence statements made by the deceased in conversations prior to the claimed execution of the note to the effect that he intended to contribute to Baker university. The appellee was then entitled to offer evidence which tended to show a contrary purpose or intent on the part of the deceased. (*Gordon v. Munn*, 87 Kan. 624, 125 Pac. 1.) The court properly admitted the testimony.

It is further contended that the court erred in admitting in evidence checks showing the signature of the deceased made prior and

subsequent to July 9. These signatures were properly identified, and the witnesses were examined as to the condition of the deceased at the time the signatures were made. Under such circumstances they were properly admitted in evidence.

The appellant next contends that the verdict is the result of bias and prejudice. A careful examination of the record leads us to the conclusion that there is no merit in this contention.

The judgment is affirmed.