MEINHARDT F. THOMSEN, Appellant, v. AUGUST
THOMSEN et al., Appellees.

No. 46059.

FEBRUARY 9, 1943.

Frazier & Rees, of Anamosa, for appellant.

George C. Gorman, of Cedar Rapids, and Schoenthaler & Lee, of Maquoketa, for appellees.

BLISS, J.—██ More complete information of all matters bearing upon the proceeding presented to us would have been helpful in the determination of the rights of the parties. Because the suit involved transactions between the appellant and deceased, and was against the executor and beneficiaries, the appellant, under section 11257, Code, 1939, was an incompetent witness as to many matters. The facts as herein stated were established by competent evidence.

John Thomsen, the deceased, was a retired farmer who became one of the organizers of the Citizens State Bank of Wyoming, Iowa, in 1913, and was its president from that time until his death on May 2, 1940. His wife died in 1909. At his death, he was survived by the following children: the appellant, the appellees, August Thomsen, Clara L. Benbow, and Dora Thomsen, and two grandchildren. The appellant, since 1914, operated a farm just out of Wyoming consisting of 47 acres of his own and 130 acres belonging to his father. The father also owned 185 acres of land. He had been mayor of the town, and also a member of the Jones County Board of Supervisors.

On March 2, 1921, appellant went to the aforesaid bank, and in the presence of the appellant, his father, Chris. A. Ingwersen, cashier (who was not a witness), and Roy Truesdell, assistant cashier, the following matters took place, according to the testimony of Truesdell, a competent witness: Truesdell made out a check upon appellant's checking account in the bank for $4,000, payable to John Thomsen, which the appellant signed and Truesdell handed to John Thomsen. On this check appear the words, "For Payment on Land." Truesdell said that he did not write

these words and did not recognize the handwriting. Truesdell was not sure that John Thomsen then wrote his name on the back of the check, but he identified his signature. At this time Truesdell, at the request of John Thomsen, drew an instrument acknowledging receipt from the appellant of $4,000, which was then signed by John Thomsen. On this receipt Truesdell wrote the words, ''Payment on Land.'' Truesdell had no recollection of just what was said about what land was being dealt with. He answered, over objection:

''I understood what it was for. * * * I understood he [John Thomsen] divided up his farm and sold Meinhardt part of it. * * * I understood that [$4,000] was for the part of that land he bought from his father. * * * I didn't get the information from John Thomsen that day or on a previous occasion. I don't know where I got it; I can't remember where I got that information.''

The check and the receipt were in evidence, and also the bank statement, and the bank ledger sheets showing the accounts of the appellant and his father. The bank statement and appellant's ledger show the debiting of appellant's account with the $4,000 check, and the other ledger sheet shows the crediting of it to the father's account, both entries being on March 3, 1921.

On September 20, 1922, the father executed a warranty deed conveying to the appellant 130 acres of land for a recited consideration of $19,500. At the same time, he executed a warranty deed conveying to the appellee August Thomsen 185 acres of land for a recited consideration of $27,750. Each deed was an unqualified and absolute conveyance, and on a basis of $150 an acre.

On May 1, 1935, John Thomsen executed a will, the second paragraph of which is as follows:

''Second, after the payment of such funeral expenses and debts, I give, devise and bequeath

''To my son, Meinhardt F. Thomsen, I have on the 20th day of September, 1922, duly made and executed a warranty deed to the following described real estate situated in Jones

County, Iowa, to-wit: * * * and delivered it in escrow to the Citizens State Bank, Wyoming, Iowa, with instructions to hold same in trust until after my death and to then deliver it to my son Meinhardt, on his payment of $2500.00, without interest, to my estate; I hereby confirm and ratify said deed and transaction, and direct my executors to see that such deed is so delivered to him after my death on his payment of said $2500.00 without interest to my estate. I wish in this connection to acknowledge that Meinhardt has heretofore paid me $4000.00 as a payment on the above land, which explains why the amount to be paid by him is $2500.00 only.''

The third paragraph was a similar one in every way, with respect to the land deeded to August Thomsen. There was a like paragraph describing a deed to Dora Thomsen of the home residence in town.

On June 21, 1939, the testator executed a codicil to the will, item 1 thereof being as follows:

''I hereby will and bequeath unto my son, Meinhardt F. Thomsen, the real estate described in the second paragraph of my said will, and I hereby direct my executors therein named to deliver to the said Meinhardt F. Thomsen the deed mentioned in said will upon the payment by said Meinhardt F. Thomsen of the sum of $6500.00. I make this portion of this Codicil for the reason that the $4000.00 mentioned in the second item of my said will, which had been paid to me by the said Meinhardt F. Thomsen, has been now repaid to him and should not be in any manner considered as a partial payment. Therefore, in all respects which are inconsistent with the terms of this Codicil I revoke the second item of my said will and direct that the terms of the second item of my said will not inconsistent herewith shall be by my executors performed and carried out.''

In item 2 of the codicil the testator changed the bequest in the will to Clara L. Benbow from $8,000 to $4,000 because of an advancement of $6,000 made to her and her son. In item 3 of the codicil, he changed the bequest of $8,000 given in the will to his daughter, Dora Thomsen, to $10,000. These changes just noted have no direct bearing on the matter for determination except as they aid in giving a more complete picture.

Both the will and the codicil were probated without objection.

After the death of the testator, a sealed envelope was found in the bank vault, containing the three deeds and the will. On the envelope, in typewriting, were these words: "Deeds from John Thomsen to Dora Thomsen, M. F. Thomsen, August Thomsen, to be delivered to the Executors of the Estate of John Thomsen upon his death." The will nominated Meinhardt F. Thomsen and August Thomsen as executors. The latter qualified. L. B. Madson, cashier of the bank, opened the envelope in the presence of the executor, who took the will, his own deed, and the deed to Dora, leaving Meinhardt's deed in the envelope. Later, August Thomsen paid to himself, as executor, the $9,000, which he was required to pay, under the will, on receipt of the deed. The father had paid the taxes on all of the land until his death.

I. Appellant alleged in his substituted petition that on or about March 2, 1921, he and his father had entered into an oral agreement by the terms of which, for the sum of $6,500, the father would execute a warranty deed to the 130 acres of land and deliver the deed to the Citizens State Bank, of Wyoming, Iowa, as escrow agent to hold said deed in trust until after his death and then deliver the deed to appellant upon the payment of $2,500, since the appellant had paid $4,000 of the amount agreed upon on March 2, 1921. He further alleged that on or about the 20th day of September 1922, such a deed had been executed by his father and placed in escrow with the bank for delivery to the appellant upon the payment of $2,500 without interest, and that on August 19, 1940, he had tendered the $2,500 to the executor and demanded the deed, which demand was refused, and that on August 23, 1940, he made a like tender and demand upon the bank, which demand was refused. Thereafter, the appellant deposited this sum with the clerk of the district court to keep his tender good.

The testimony was all received subject to objections. The findings of the court were general and did not relate to specific matters of fact. The appellant was an incompetent witness under section 11257, Code, 1939, respecting communications or transactions with his father. Objection was made by appellees

that the witness Truesdell was such an incompetent witness, because the bank was a party defendant. This objection is without merit. Truesdell had severed his connection with the bank some years before he was a witness. The record shows that he had no interest in the controversy whatsoever. Furthermore, the bank, according to the testimony of its cashier, had no interest in the matter. It was simply an escrow agent, and had no financial interest in the controversy, or in the land involved. There is also some claim by the appellees that the deed was not delivered in escrow. We can see no sound basis for such contention.

It appears to the court the record clearly establishes that there was such an agreement as the appellant contends for. While his mouth was closed respecting the transaction with his father, the testimony of Truesdell, the check and receipt, the bank records, the admissions against the father's interest as contained in the second paragraph of his will, the placing of the deeds in the envelope with the notation thereon found in the vault of the bank of which he was the president, the deed itself, the similar transactions with August and with Dora, all speak most convincingly of the truth of the appellant's claim respecting the agreement with his father. It appears to us that no reasonable person fairly searching for the truth could read the record and come to any other conclusion. We have no hesitancy in so holding.

II. Appellant makes no claim that the property is his by devise, or that he takes it under the will. We think he is right in this. While the will states that the testator gives, bequeaths, and devises to Meinhardt F. Thomsen, the remainder of the paragraph of the will clearly shows the claimed agreement with this son, the payment of $4,000 on the consideration, and the delivery of the executed deed in escrow and in trust for the grantee, with instructions for its delivery on payment of the $2,500. So far as this land and this deed are concerned, the statements in the will were simply directions to the bank to carry out its agency and trust. Were the appellant claiming by devise, the codicil would have to be considered as a factor in such transfer of the property. It must also be considered in relation

to the transaction between the testator and the appellant with respect to their contract and the deed, but in a different relationship.

The case, in our judgment, sums up into one proposition, and that is, Must the appellant pay $2,500 or $6,500 to get his deed?

In his petition, appellant alleged the execution of the codicil and set it out. In a separate paragraph of the petition, he denied that his father had ever repaid the $4,000 which he had given his father on March 2, 1921. These allegations were omitted from the substituted petition.

There was considerable strategy in the trial—perhaps too much. The appellees, as a part of the cross-examination of the appellant, offered appellant's petition in evidence, their purpose, apparently, being to get in evidence the admission of the appellant as to the execution of the codicil. Appellant made this objection to the offer: ''To which introduction plaintiff objects for the reason that the exhibit offered doesn't tend to prove or disprove any issue in this controversy; no proper foundation laid for the introduction of said exhibit, same has not been properly identified.'' The objection did not include that, with respect to the provisions of the codicil, it was hearsay and self-serving. Both the allegation respecting the codicil and the allegation denying the statement therein that the $4,000 had been repaid, are in the record for what they are worth. The antidote was introduced with the poison. Both the statement in the codicil and the assertion of nonrepayment were hearsay and self-serving, and are ordinarily held to be inadmissible, and not within any general exception to the hearsay rule. See Malcor v. Johnson, 223 Iowa 644, 648, 649, 273 N. W. 145; Nortman v. Lally, 204 Iowa 638, 641, 215 N. W. 713; Shuck v. Vanderventer, 4 (G. Greene) Iowa 264; In re Estate of Manning, 215 Iowa 746, 750, 244 N. W. 860; Ankeney v. Brenton, 214 Iowa 357, 369, 238 N. W. 71; Streblow v. Sylvester, 195 Iowa 168, 170, 191 N. W. 788; Rice v. Armour & Co., 194 Iowa 144, 147, 187 N. W. 588; 3 Wigmore on Evidence, 2d Ed. 2273, section 1765; 31 C. J. S., Evidence, 948 et seq., section 216; 2 Jones Commentaries on Evidence, 629, 634, section 297;

Orr v. Armstrong, Tex. Civ. App., 81 S. W. 2d 710, 712; Rich v. Tanenbaum, 60 R. I. 254, 198 A. 240.

Later the appellees offered the original codicil. Objection was made that it was self-serving, incompetent, irrelevant, immaterial, not made with the knowledge of appellant, and neither tending to prove nor disprove any issue in the case.

There are authorities, pro and con, that where one party has offered admissions of the declarant against interest, his self-serving statements to the contrary are admissible. See Trustees of Baker University v. Farrar, 134 Kan. 722, 8 P. 2d 343; 31 C. J. S., Evidence, 948, 957, section 216.

Whether the self-serving statement in the codicil that the $4,000 was repaid was admissible need not be determined. No other proof of its repayment was offered. The burden of proving such fact was upon the appellees. This case is triable de novo on appeal. We are not bound to give weight to testimony which is inadmissible, or which is of little probative value. The record with respect to the repayment or nonrepayment of the $4,000 is not of that weight and character to satisfy the conscience of a chancellor to the extent that he can say he has reached a definite conclusion on the matter. There must be other and competent evidence respecting this issue available. The court below was entitled to it and we are entitled to it. Any repayment must have been made in the comparatively few years between the making of the will and the codicil. There should be available evidence of the payment of such a sum as $4,000. The appellants should not be required to pay it again if it was not repaid; neither should the estate be denied the payment if it has been repaid.

The judgment and decree is therefore reversed and the case is remanded solely for the purpose of determining whether the repayment was or was not made and to enter decree accordingly and in conformity herewith.—Reversed and remanded.

GARFIELD, C. J., and HALE, MILLER, WENNERSTRUM, MULRONEY, OLIVER, and MANTZ, JJ., concur.