# IN THE COURT OF APPEALS OF IOWA

No. 19-1115
Filed November 6, 2019

**IN THE INTEREST OF P.H.,**
**Minor Child,**

**T.H., Father,**
        Appellant,

**S.H., Mother,**
        Appellant.
_____

Appeal from the Iowa District Court for Chickasaw County, Linnea M.N. Nicol, District Associate Judge.

A mother and father both appeal the termination of their parental rights to their one-year-old daughter. **AFFIRMED ON BOTH APPEALS**.

Ann M. Troge, Charles City, for appellant father.

Becky Wilson of Elwood, O'Donohoe, Braun, White, LLP, Charles City, for appellant mother.

Thomas J. Miller, Attorney General, and Anna T. Stoeffler (until withdrawal) and Mary A. Triick, Assistant Attorneys General, for appellee State.

Andrew Thalacker of the Juvenile Public Defender Office, Waterloo, guardian ad litem for minor child.

Considered by Tabor, P.J., and Mullins and May, JJ.

**TABOR, Presiding Judge.**

This appeal arises from the termination of parental rights of Samantha and Travis to their one-year-old daughter, P.H. Each parent appeals separately. Samantha contends the State did not prove the statutory grounds for termination. Additionally she contends the court erred in finding an additional period of rehabilitation would not remedy the situation. Travis appeals on similar grounds. The juvenile court found P.H. could not be returned to her parents now or in the foreseeable future and their rights should be terminated. After reviewing the record and legal arguments presented,[1] we reach the same result as the juvenile court.

## I. Facts and Prior Proceedings

P.H. was born in May 2018. Her family came to the attention of the Iowa Department of Human Services (DHS) in December 2017 when Samantha was pregnant with P.H. Because Samantha tested positive for methamphetamine during her pregnancy and Travis was uncooperative, the court granted the DHS's request for a temporary removal of P.H. following her birth. The DHS returned the child to her parents in mid-June 2018. But the next month, the DHS requested the temporary removal of P.H. again after both parents missed multiple drug screenings. Travis tested positive during a screening, and Samantha provided a contaminated test. In late July, the DHS placed P.H. with Samantha's sister and

---

[1] We review termination-of-parental-rights cases de novo. *In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016). While not bound by the juvenile court's fact findings, we give them weight, particularly on credibility issues. *Id.* The State must present clear and convincing evidence to support the termination. *In re A.M.*, 843 N.W.2d 100, 110–11 (Iowa 2014). Evidence satisfies that standard if no serious or significant doubts exist about the correctness of conclusions of law drawn from the proof. *In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000). The child's best interests remain our primary concern. *In re L.T.*, 924 N.W.2d 521, 529 (Iowa 2019).

her husband.[2]    Samantha and Travis maintained contact with P.H. through supervised visits.

In mid-August 2018 the court adjudicated P.H. as a child in need of assistance (CINA), as defined in Iowa Code section 232.2(6)(c)(2) (2018), because both parents tested positive for methamphetamine and Travis had been violent toward Samantha.

In early October 2018, the court adopted a permanency plan listing changes that Samantha and Travis had to make for P.H. to return to their custody safely. The plan directed Samantha to participate in a substance-abuse evaluation and follow through with the recommendations, individual therapy, medication management, and random drug testing.  The plan also required Samantha to meet with the DHS worker monthly; meet with the family safety, risk, and permanency (FSRP) provider weekly; follow recommendations of the child's early access evaluation; attend and participate in visitation; and maintain safe and stable housing.  The plan included the same requirements for Travis—minus individual therapy and medication management.  Also if the couple planned to remain together they needed to participate in couples counseling and address their domestic-violence issue.

Neither parent followed through with the plan.  They attended only four of thirteen requested drug tests.  One time Samantha went to the testing facility but she refused to submit to testing when the monitor requested a hair sample.  The

---

[2] This maternal aunt and uncle adopted Samantha's previous child with Travis after the court terminated their legal rights.

parents also failed to address the issue of Travis's violence toward Samantha. And they were inconsistent in their visitations.

The State filed a petition to terminate parental rights in January 2019. The court held a hearing in May and issued its order terminating rights in June 2019. The order relied on Iowa Code section 232.116(1)(g) and (h) (2019) for both Samantha and Travis. The parents challenge that order in separate petitions on appeal.

## II. Analysis

The termination of parental rights follows three steps. *In re D.W.*, 791 N.W.2d 703, 706–07 (Iowa 2010). First, we must decide if the evidence satisfies a ground for termination asserted under section 232.116(1). *Id.* If so we then apply the best-interests framework of section 232.116(2). *Id.* at 707. If termination is in the child's best interests, then we consider whether any factor in section 232.116(3) should preclude termination. *Id.*

### *Statutory Ground for Termination*

Both parents argue the State failed to prove by clear and convincing evidence that their rights should be terminated under paragraphs (g) and (h). On appeal we only need to find sufficient evidence of one of the grounds to affirm the ruling. *See In re J.B.L.*, 844 N.W.2d 703, 704 (Iowa Ct. App. 2014). Here, we focus our analysis on paragraph (h).

Section 232.116(1)(h) permits the court to terminate parental rights when: (1) The child is three years of age or younger; (2) the child has been adjudicated a CINA under section 232.96; (3) the child has been removed from the physical custody of the parents for at least six months of the past twelve months, or for the

last six consecutive months and any trial period at the home was less than thirty days; and (4) there is clear and convincing evidence that the child cannot be returned to the parents as provided in section 232.102 at the present time.

The first three elements are uncontested. P.H. was one year old, adjudicated as a CINA in August 2018, and living with her maternal aunt for at least six months.

### i.  Samantha's rights

Samantha argues the State failed to prove by clear and convincing evidence that she lacks the ability or willingness to respond to services that would remedy the situation and that P.H. could not be returned to her within a reasonable time. That argument appears to address paragraph (g).[3]

Samantha does not address the fourth element of subsection (h), that the child cannot be returned "at the present time." *See A.M.*, 843 N.W.2d at 111 (interpreting statutory language "at the present time" as the time of the termination hearing). Even if Samantha had contested this element, the record supports the juvenile court's decision that P.H. could not be safely returned to her mother's care.

---

[3] The court finds that all of the following have occurred:

> (1) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (2) The court has terminated parental rights pursuant to section 232.117 with respect to another child who is a member of the same family or a court of competent jurisdiction in another state has entered an order involuntarily terminating parental rights with respect to another child who is a member of the same family.
> (3) There is clear and convincing evidence that the parent continues to lack the ability or willingness to respond to services which would correct the situation.
> (4) There is clear and convincing evidence that an additional period of rehabilitation would not correct the situation.

Iowa Code § 232.116(1)(g).

Samantha failed to show up for many drug tests, missed visits with P.H., and overall failed to comply with the permanency plan.

We recognize Samantha has demonstrated some good parenting skills and has made an effort to access certain services she needs. But P.H. is still very young and cannot protect herself in a risky situation. And the record reveals persistent problems surrounding Samantha's drug use, her fraught relationship with Travis, her financial instability, and housing. Because Samantha has not adequately addressed these problems, we find termination of parental rights is proper under section 232.116(1)(h). *See In re Dameron*, 306 N.W.2d 743, 755 (Iowa 1981) (finding insights into what the future holds if a child is returned from evidence of the parent's past performance).

### ii. Travis's rights

Travis also argues the State has not provided clear and convincing evidence that P.H. could not be returned to him in a reasonable time. He contends he is sober and has attended "multiple counseling sessions as directed by the court." Like Samantha, Travis fails to argue P.H. could be returned to his care at the "present time."

We agree with the juvenile court's decision to terminate Travis's rights under paragraph (h). Travis failed to appear for many drug tests ordered as part of the permanency plan, and he tested positive for methamphetamines at least once.[4] Travis has shown hostility toward DHS workers and others. *See In re M.B.*, 595

---

[4] Travis maintains the DHS tampered with test results and argues he has tested "clean" through a different service. The record does not support his claim that DHS tampered with the test results.

N.W.2d 815, (Iowa Ct. App. 1999) (finding threatening behavior towards social workers as equivalent to rejecting services).  In the same vein, Travis did not take any action to address his abuse toward Samantha.  In fact, he denied any domestic violence in the relationship.  And he was inconsistent with visitations with P.H.  On this record, P.H. could not have been safely returned to his care at the time of the termination hearing.

### B.     Best Interests of the Child

Both parents argue it is not in P.H.'s best interests to have their rights terminated.  *See* Iowa Code § 232.116(2) (requiring courts to give primary consideration to the child's safety; to the best placement to further her long-term nurturing and growth; and to her physical, mental, and emotional needs).  Both parents claim P.H. has a strong bond with them and that they have exhibited good parenting skills.

The record does show glimpses of good parenting skills, such as concern for the child's safety while in a car seat and attention to her various health concerns.  But after reviewing the record as a whole, we conclude termination of parental rights will best advance the child's safety and long-term well-being.  While we recognize the love and bond the parents have with their child, the substance-abuse issues and relationship instability render the parents unable to care for her. *See In re J.K.*, 495 N.W.2d 108, 113 (Iowa 1993).

P.H. is currently living with her maternal aunt who has already adopted P.H.'s biological sibling.  *See In re of A.M.S.,* 419 N.W.2d 723, 734 (Iowa 1988) (extolling preference for keeping siblings together).

### C. Additional Time for Reunification

Finally, both parents argue the juvenile court erred in denying them an additional six months to reunify under section 232.104(2)(b). Under that section, the court can only delay permanency if it can "enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period." A parent's past performance gives insight into the future care they may provide. *In re R.K.B.*, 572 N.W.2d 600, 601 (Iowa 1998).

Here, the parents insist they have been pursuing different therapy and treatment options. But we are mindful of their failure to follow the previous reunification plan. Both Samantha and Travis have had their relationships with other children terminated under previous juvenile proceedings. And their continuing substance abuse indicates an additional six months will not be sufficient to gain the stability necessary to resume custody of P.H. A child should not have to wait in the limbo of foster care because of a parent's inability to provide a safe and drug-free home. *In re A.C.*, 415 N.W.2d 609, 613 (Iowa 1987). We agree with the district's decision denying additional time.

**AFFIRMED ON BOTH APPEALS.**