JUDITH A. LINDQUIST, Plaintiff-Appellant, *v.* THE HIGHLAND PARK HOSPITAL FOUNDATION *et al.*, Defendants-Appellees.

Second District (2nd Division)   No. 75-219

Opinion filed August 9, 1976.

Alan D. Katz and Philip A. Crifase, both of Chicago, for appellant.

Robert M. Bollman and George E. Riseborough, both of Diver, Ridge, Brydges & Bollman, of Waukegan, for appellees.

Mr. JUSTICE RECHENMACHER delivered the opinion of the court:

Plaintiff filed an action to recover damages for personal injuries alleged to have been caused by negligence of the defendants (Hospital) when plaintiff fell in a bathtub owned and "controlled" by the Hospital. Her complaint, as amended, alleged that the Hospital "negligently" failed to keep a bathtub and adjacent area in the bathroom "controlled" by the Hospital, in a nurse's apartment which it rented to plaintiff, in a reasonably safe condition. She alleged that the negligence consisted of the Hospital's failure "to install or provide a grab bar or support device" at the bathtub, or "adhesive abrasive strips or mat" on the floor of the bathtub, to support the user of the tub "in entering or exiting therefrom safely." The Hospital's answer admitted owning the apartment and renting it to plaintiff but denied the allegations that it controlled the bathroom and that its conduct was negligent.

At the close of plaintiff's case the trial court directed a verdict in favor of the Hospital and against the plaintiff, and entered judgment accordingly. It held that under the evidence the Hospital owed no duty to plaintiff to install a grab bar or adhesive strips. Plaintiff appeals. The ground urged for reversal and remandment is that plaintiff's evidence showed that the Hospital retained control over the bathroom (and bathtub) and thus owed a landlord's duty to keep it in reasonably safe condition by installing those devices; that its failure to do so constituted negligence.

The following is a summary of the essential evidence introduced by plaintiff on the issue of liability: Plaintiff was a licensed, practical nurse who was hired by the Hospital after responding to an advertisement which included the statement that housing facilities were available for single nurses employed by the Hospital. After plaintiff reported for work, in late February, 1971, she was referred to Mrs. Kropp, a clerk-typist in the Hospital's maintenance department, who was also a "cottage attendant." These nurses' apartments consisted of an apartment building and several one-story cottages. Each cottage was divided into two separate furnished apartments. Each apartment contained a living room, kitchen and utility room shared by the residents, and four bedrooms (two on each side of the living room). Between each pair of bedrooms was a connecting bathroom.

Mrs. Kropp exhibited the apartment unit, including the bathroom, to the plaintiff and introduced her to the other two nurses residing there. The rental rate was about $46 a month and was to be deducted from her salary. Mrs. Kropp explained a document captioned "Hospital Apartments," including 17 numbered paragraphs of "Conditions of Residence," to the plaintiff. Paragraph 10 thereof, dealing with painting and decorating, stated among other things, that " '[c]ontact' paper or similar adhesive

backed material is not permitted on walls and furnishings," and that "[r]esidents will be charged for damage resulting from unauthorized attachments to walls and woodwork." Following paragraph 17 appeared the following:

"At least one resident will be contacted prior to entering individual apartments on hospital business (i.e., housekeeping, cleaning and inspecting, maintenance repairing, personnel showing rooms, etc.). The person contacted is responsible for notifying the other occupants that such work has been scheduled. The hospital reserves the right to inspect or service the apartments, and residents are requested not to interfere with access to the apartments by authorized personnel."

Plaintiff then signed a statement at the foot of the document that she had received and read the "Conditions" and agreed "to abide by them as a condition of my residence in the hospital apartments ".

The other bedroom connected to the bathroom used by the plaintiff was then vacant (and so continued to be), and plaintiff placed and kept her personal effects in her adjoining bathroom.

Under plaintiff's offer of proof, plaintiff testified, out of the presence of the jury, to several telephone conversations she had had with unidentified male voices when she dialed the maintenance department number; that from time to time, in response to those calls, loose tiles in the bathroom wall were replaced and repairs were made to the toilet tank to stop water running; that on one of such occasions she asked the man if she could get a handrail put in the bathroom or abrasive strips in the tub and that he answered that he would check on the handrail and as to the strips he would "look into it" and "would do it"; that plaintiff had seen such strips in the next apartment; that on two later occasions she asked the same person who was making other repairs in the bathroom if he had found out about the abrasive strips and that on each occasion he said that he would look into it and "take care of it," but that it was never done. The trial court denied plaintiff's offer of such proof.

Plaintiff first became aware of the absence of a grab bar or abrasive strips during her first or second week in the apartment. On May 14, 1971, she came to her apartment from her work at the hospital, relaxed a while and then decided to take a bath. She filled the bathtub about one-half full of water and undressed. While stepping with her right foot into the tub, she leaned against the wall, her foot slipped and she fell down sustaining injuries.

The trial court also rejected plaintiff's offer of proof by a graduate civil engineer who became a building contractor that in his 25 years as a builder he had built over 2,500 residential units in downstate Illinois and the greater Chicagoland area; that he had installed or supervised installation of over 4,000 bathrooms; that he had installed in each of them a soap dish holder with (generally) a handle, and that, based upon his

experience, failure to provide a grab bar at or near the tub was an unsafe condition. In rejecting this offer the trial court stated that expert opinion was not required for the question "as to whether * * * the installation or failure to install a grab bar constituted an unsafe place or was unsafe."

Plaintiff's primary contention is that she presented sufficient evidence to establish a prima facie case, and that the trial court erred in directing a verdict. A directed verdict for the defendant requires that the trial court find that all of the evidence, in its aspects most favorable to the plaintiff, so overwhelmingly favors the defendant that no contrary verdict based on that evidence could ever stand. *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill. 2d 494.

■■ Tort actions grounded in negligence require the showing of a duty owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately resulting from the breach. *(Mieher v. Brown,* 54 Ill. 2d 539; *Champion v. Knasiak,* 25 Ill. App. 3d 192). The existence of a duty is a question of law to be determined by the court. *Barnes v. Washington,* 56 Ill. 2d 22.

In the case at bar plaintiff was shown the entire apartment, including the bathroom, at the time she signed the "Conditions of Residence." There was no bathtub grab bar or adhesive strips at that time and no agreement was made by the Hospital to provide them.[1] She occupied the apartment for a week or two before she became aware of their absence. There was no patent or latent defect in the bathtub or in its immediate area, and no fraudulent representation made by the Hospital. There was no evidence of any statute or ordinance requiring the Hospital to install a grab bar or abrasive strips, and we are unaware of any authority where it has been held that there is a statutory duty to do so, or that failure to do so constitutes negligence. Likewise, there were neither allegations nor evidence that the bathtub was inherently dangerous.

■■ It is common knowledge that the use of a bathtub, especially when filled with water, requires care. The "Conditions of Residence" which plaintiff signed did not prohibit plaintiff's own utilization of adhesive abrasive strips or of a portable rubber bath mat.[2] We conclude as did the trial court that the evidence presented by the plaintiff did not establish any duty upon the defendant. The trial court, therefore, properly directed a verdict in favor of defendant. Having reached this conclusion there is no need for us to consider whether the Hospital (as a landlord) retained control over the bathroom and bathtub, and this

---

[1] Even assuming the admissibility of plaintiff's testimony regarding a promise by an unidentified employee of the Hospital to apply adhesive abrasive strips to the floor of the bathtub in question, and assuming that he was authorized by the Hospital to make such promise, it would amount to nothing more than *nudum pactum. Forshey v. Johnston,* 132 Ill. App. 2d 1106; *Bauer v. Ford,* 297 Ill. App. 640.

[2] Paragraph 10 only prohibited the use of " '[c]ontact' paper or similar adhesive backed material * * * on walls or furnishings" and referred to "unauthorized attachments to walls and woodwork".

opinion is not to be construed as holding that the circumstances constitute a retention of such control in the landlord.

Therefore, the judgment of the circuit court of Lake County is affirmed.

Judgment affirmed.

T. J. MORAN, P. J., and DIXON, J., concur.