DAVID A. LYONS *et al.*, Plaintiffs-Appellees, *v.* CHRIST EPISCOPAL CHURCH *et al.*, Defendants-Appellants.—(RICHARD B. WALLACE, d/b/a Wallace Realtors, Cross-Plaintiff, *v.* CHRIST EPISCOPAL CHURCH, Cross-Defendant.)

Fifth District   No. 78-238

Opinion filed May 4, 1979.

258

G. MORAN, J., dissenting.

Dunham, Boman & Leskera, of Belleville (John W. Leskera and Russell K. Scott, of counsel), for appellant Christ Episcopal Church.

Frank R. Hudak and Dane W. Garrett, both of Collinsville, for appellant Richard B. Wallace.

Dwight Taylor, of Collinsville, for appellees.

Mr. JUSTICE JONES delivered the opinion of the court:

Following a bench trial, the circuit court of Madison County found defendants, Christ Episcopal Church and Wallace Realtors, liable for negligent misrepresentation in connection with the sale of a residence in Collinsville to plaintiffs David and Denise Lyons. Judgment was entered against them in the amount of $1703 and costs of suit. Both defendants have appealed, submitting separate briefs.

The realtor contends that the circuit court erred in denying its motion to dismiss the negligent misrepresentation count against it for failure to state a cause of action. The church, in turn, contends that the complaint against it should have been dismissed since contract rescission was the only proper remedy, and that the judgment against it for negligent misrepresentation was contrary to the manifest weight of the evidence.

The facts of this case may be stated as follows. In June of 1974, the church entered into a listing agreement with the realtor for the sale of a residence which was then being used as a rectory. The residence was located at 208 Sumner Boulevard in Collinsville, Illinois. On behalf of the church, an attorney represented the house to realtor Richard Wallace as being fully connected to the city's sanitary sewerage system, except for a basement drain which was connected to a septic tank.

On June 20, 1974, the realtor advertised the house in the Collinsville Herald, listing one feature as "sewers." After seeing the advertisement, the Lyonses contacted the realtor and arranged to view the house on June 21. They were thereafter shown the house by agent Susan Landing, who during the viewing informed them that the house was connected to the city's sewerage system.

On June 27, 1974, the Lyonses and the church executed a purchase agreement for the house. One year later, neighbors complained to the Lyonses about the odor of a septic tank. In response, the Lyonses had the city perform a dye test which established that the house was not in fact connected to the city's sewers. After obtaining several estimates, they had the house connected to the sewers at a total cost of $1703 and commenced this action against both defendants.

On October 20, 1977, plaintiffs amended their original complaint by adding counts three and four. Count four was directed at the realtor and alleged that it was liable for negligent misrepresentation. The realtor filed a motion to dismiss this count on October 31, asserting that the count was factually insufficient to state a cause of action or to enable the realtor to prepare a defense for trial. This motion was subsequently denied.

■■ After examining count four, we find that it should have been dismissed; the judgment against Wallace Realtors must be reversed.

At least since *Rozny v. Marnul* (1969), 43 Ill. 2d 54, 250 N.E.2d 656, Illinois has recognized that an action for negligent misrepresentation is maintainable if it alleges the necessary elements of an action for negligence. (*McAfee v. Rockford Coca-Cola Bottling Co.* (1976), 40 Ill. App. 3d 521, 352 N.E.2d 50.) These elements are a duty owed by defendant to plaintiff, a breach of such duty and injury proximately resulting from such breach. (*Lindquist v. Highland Park Hospital Foundation* (1976), 40 Ill. App. 3d 722, 353 N.E.2d 156; *Browning v. Heritage Insurance Co.* (1975), 33 Ill. App. 3d 943, 338 N.E.2d 912.) Of course, it is fundamental that there can be no recovery in tort for negligence unless the defendant has breached a duty owed to the plaintiff. *Boyd v. Racine Currency Exchange, Inc.* (1973), 56 Ill. 2d 95, 306 N.E.2d 39.

■■ Count four simply alleges that the realtor acted as a conduit to pass on the church's inaccurate representation that the real estate was connected to a complete sanitary sewer system. This act could be negligent only if the realtor had a duty to independently corroborate the representations of the church with respect to the house. Although the plaintiffs did not assert that the realtor had such a duty, it would not alter our decision if they had since it is our belief that a realtor has no duty to prospective purchasers to independently substantiate the representation of a disclosed seller unless he is aware of facts which tend to indicate that

such representation is false. Such was not the case here. Of course, even if such a duty is invoked, there is no break unless the realtor could have discovered the falsity of the representation by exercise of ordinary care.

It is fundamental that there can be no liability in negligence without fault. The rule we follow would permit a finding of fault only in situations where the real estate agent knew or should have known that the representation might be false. If the instant complaint were sufficient to state a cause of action, the element of fault would be entirely absent; the realtor would be liable simply because he acted as the church's agent.

We further believe that our holding is analogous to and consistent with comment b of section 348 of the Restatement (Second) of Agency (1957). That comment states that an agent who repeats a fraudulent misrepresentation of his principal is not liable unless he knows or *should know* that it was a misrepresentation, and that an agent can properly rely upon statements of the principal to the same extent as upon statements from any other reliable source.

We turn now to the contentions of the church.

■■ The church's first argument is that a mutual mistake of fact existed as to the house's connection to city sewers and that this mistake precluded plaintiffs from pursuing any remedy other than rescission of the contract. This argument is without merit. It misses entirely the central fact of this litigation, that the "mistake" was created by the negligence of the church.

■ The general rule with respect to fraudulent misrepresentation in the sale of real estate is that the contract is merely voidable, not void, at the option of the injured party. (*Halla v. Chicago Title & Trust Co.* (1952), 412 Ill. 39, 104 N.E.2d 790; 91 C.J.S. *Vendor and Purchaser* §§54 and 157(b) (1955); see also 35 Ill. L. & Prac. *Vendor & Purchaser* §73 (1958).) The same rule must obtain where, as here, there has been a negligent misrepresentation made by the seller. The defendant may not choose the plaintiffs' remedy. They are free to honor the contract and pursue an action in tort to compensate them for their injury.

The church's final contention is that the finding that it was negligent in making the instant representation is against the manifest weight of the evidence. We disagree.

This contention is based upon the church's belief that they were justified in relying upon an alleged representation of Graham Sanitation that the bulk of the house was connected to the sewers. The church argues that in view of this representation, "there was no further need or reason [for it] to conduct any further tests or examination[s] to determine whether the property was connected to the sewers." With this we also disagree.

The only testimony with respect to the involvement of Graham

Sanitation came from church official Walter Boehm, who at all relevant times was personally responsible for the upkeep and maintenance of the residence involved in this lawsuit.

Mr. Boehm testified that approximately one year before the time of the sale, the drain in the basement of the house was backed up. An inspection of the backyard disclosed a hole, into which Mr. Boehm stuck a rod in order to "ascertain whether it was a sanitary sewer tank or there wäs another one involved." Boehm subsequently obtained the services of Graham Sanitation to empty the contents of the septic tank which he had discovered. Mr. Boehm spoke with Mr. Graham by telephone after the tank had been emptied. On direct examination, Mr. Boehm testified that Graham told him that the house "almost had to be connected to the sewers." On cross-examination, however, he admitted that he could not recall the conversation exactly and that he had questioned Graham twice about the house's being connected to the sewers since Graham "was not sure one way or the other." Mr. Boehm did not know if Graham ran a dye test to determine whether the house was connected to the sewers since he was not there when Graham was. The results of the transaction with Graham were communicated to the governing board of the church.

■ It is apparent from the facts stated above that the church could not reasonably represent that the house proper was connected to.the sewers on the basis of Graham's opinion. In the first place, the testimony suggests that Graham merely stated that it was likely that the house was connected to the sewers, not that it was actually so connected. In the second place, the church officials had no reason to and did not in fact believe that Graham performed any tests or examinations to determine whether the house was connected to the sewers. Graham merely emptied a septic tank. In addition, the facts suggest that the church officials suspected that the property's sanitary facilities were serviced by a septic tank. Under these circumstances it was negligent for the church to represent the house as it did without doing anything more to determine whether the property was in fact conmected to the city's sewers. The evidence at trial demonstrated that a simple, inexpensive dye test which would have conclusively settled the question was available through the city. Moreover, a phone call to the city treasurer would have revealed that no tap-on fee had ever been paid for this property.

For the foregoing reasons, we reverse the judgment of the circuit court of Madison County with respect to Wallace Realtors and affirm as to Christ Episcopal Church.

Affirmed in part and reversed in part.

KUNCE, J., concurs.

Mr. PRESIDING JUSTICE GEORGE J. MORAN, dissenting:

The plaintiffs in this case failed to allege either in their original or amended complaint that the defendant realtors owed a duty to the purchasers independent of their duties as an agent. However, the majority stated:

> "Although the plaintiffs did not assert that the realtor had such a duty, it would not alter our decision if they had, since it is our belief that a realtor has no duty to prospective purchasers to independently substantiate the representation of a disclosed seller unless he is aware of facts which tend to indicate that such representation is false."

Other jurisdictions have held that a real estate broker may be held liable for misrepresentations made to prospective purchasers even though such misrepresentations may have been innocently made. In *Spargnapani v. Wright*, 110 A.2d 82 (D.C. Mun.App. 1954), the broker's saleswoman represented to the prospective purchasers that the heating system in the home was in good condition when in fact it was defective and unusable. The saleswoman denied making a representation that the heating system was in good condition but did admit that she had told the Spargnapanis that the house could be heated for a little over $100 per year, and that the ceilings and walls were insulated. She stated that this was the information she had received from the former owner, and further stated that she had no knowledge of any defects in the heating system. The court reviewed the findings of the trial court and found the defendant liable for misrepresentation. The court stated:

> "If the broker innocently represented that the heating plant was in workable condition and was mistaken in that representation, or made the representation without knowing whether it was true or false, the injured party may recover in an action for fraud." (110 A.2d 82, 83.)

The court went on to say that even assuming that there was no deliberate deception on the part of the broker and no actual knowledge of the defect, the "selling agent did not disclaim such knowledge; on the contrary, she represented that there was no defect when the opposite was true." (110 A.2d 82, 84.) The court concluded that the broker had displayed a pretense of knowledge where there was in fact no actual knowledge, which was fraud.

> "Innocent though the pretended knowledge may have been, it was in fact baseless. The law does not, in such a situation, withhold its aid from one who has been led into a contract to his detriment." 110 A.2d 82, 84.

In this case, the broker's agent represented to the purchasers that the

house was fully connected to the city sewer system when it was not. As in *Spargnapani*, the agent had no knowledge as to whether the representation was truthful or accurate and spoke only based on information given to the broker by another person. The agent was not guilty of any deliberate deception which she would have been had she represented that the house was fully connected to the city sewer, knowing that it was not. She represented that the house was fully connected without knowing this statement to be true, without disclaiming any knowledge of whether the statement was true and without verifying the accuracy of that statement. The court in *Spargnapani* held that fraud includes the pretense of knowledge where there is none.

In *First Church of the Open Bible v. Cline J. Dunton Realty, Inc.*, 19 Wash. App. 275, 574 P.2d 1211 (1978), the court held the two real estate brokers liable to the plaintiff for negligently misrepresenting the boundary lines of property which the plaintiff bought. The court stated that a real estate broker had a duty to third persons:

> "Although S & R, the listing broker, is an agent of the seller charged with the attendant duties arising from that agency, it is nevertheless liable to a third party for misrepresentation of boundary lines of property offered for sale." (19 Wash. App. 275, ___, 574 P.2d 1211, 1214.)

The court further stated that the selling agency had a duty to exercise due care in ascertaining the particular property for sale. 19 Wash. App. 275, ___, 574 P.2d 1211, 1215.

A real estate broker, being the agent of the seller, has a duty to the seller, but more than that, a real estate broker may in some circumstances have a duty to third persons. The Supreme Court of Wisconsin in *Rusch v. Wald*, 202 Wis. 462, 232 N.W. 875 (1930), commented on the duties and obligations of real estate brokers when dealing with the public:

> "The purpose and method of licensing real-estate brokers to do business and limiting this field to those so duly licensed creates a relation between the broker and the public dealing with him, which places on him an obligation commensurate with the advantage he has in the general knowledge that he is designated as one having special understanding and information concerning the things affecting his particular vocation. If a broker deceives and misleads one into making a contract to the broker's or his principal's undue advantage and does so under such circumstances that trust and confidence are reposed on the one side, and the influence of his recognized and licensed position and the impression of superior knowledge accompanying it are exercised on the other, the customer has a cause of action for rescission or

damages, providing, of course, the customer has acted within proper limitations as to the exercise of prudence and diligence." 202 Wis. 462, 463-64, 232 N.W. 875, 875-76.

Real estate brokers and their agents hold themselves out to the public as having specialized knowledge with regard to housing, housing conditions and related matters. The public is entitled to and does rely on the expertise of real estate brokers in the purchase and sale of its homes. Therefore there is a duty on the part of real estate brokers to be accurate and knowledgeable concerning the product they are in the business of selling—that is, homes and other types of real estate. Courts have held in many cases that purchasers are entitled to rely on real estate brokers' statements. In *Shane v. Hoffman*, 227 Pa. Super. 176, 324 A.2d 532 (1974), the court held both the seller and the broker liable for fraudulent representation. The agent represented to the purchasers that there was no problem with the sewer system of a home. The evidence showed that both the seller and the agent were aware that there had been sewage backup in the basement. The court found that the purchasers were justified in relying on the agent's statements.

> "The property was vacant, and as the agent was the only person with whom they had direct dealing, their reliance on his representations was justifiable, and the resultant harm just two weeks after possession was causally related." 227 Pa. Super. 176, 183, 324 A.2d 532, 536.

Again, in *Maxwell v. Ratcliffe*, 356 Mass. 560, 254 N.E.2d 250 (1969), the court found the purchasers justified in their reliance on the broker's representations as to the dryness of the cellar. The court also found that the brokers knew or should have known from information available on the listing service that there was a problem with water seepage in the basement.

> "Because the question of the dryness of the cellar had been raised expressly, there was a special obligation on the brokers to avoid half truths and to make disclosure at least of any facts known to them or with respect to which they had been put on notice. [Citation.]
>
> There was ample evidence of reasonable reliance and damage. The brokers acted in respects in which they owed a duty, not only to their principal, Ratcliffe, but to the Maxwells with whom they dealt directly." 365 Mass. 560, 562-63, 254 N.E.2d 250, 252.

The courts have found that purchasers are entitled to rely on real estate brokers' representations as to the condition of a house. A real estate broker should then be obligated to insure that his representations are more than simply free from deliberate deceit but rather that they are accurate and truthful statements as to existing conditions. If there is no

obligation or duty on the part of real estate brokers to insure that their statements are truthful and accurate, then purchasers cannot be entitled to rely on those statements. This court in *Citizens Savings & Loan Association v. Fischer*, 67 Ill. App. 2d 315, 214 N.E.2d 612 (1966), has endorsed the American Law Institute's stance on what constitutes negligent misrepresentation:

"One who in the course of his business or profession supplies information for the guidance of others in their business transactions is subject to liability for harm caused to them by their reliance upon the information if

(a) he fails to exercise that care and competence in obtaining and communicating the information which its recipient is justified in expecting, and

(b) harm is suffered

(i) by the person or one of the class of persons for whose guidance the information was supplied, and

(ii) because of his justifiable reliance upon it in a transaction in which it was intended to influence his conduct or in a transaction substantially identical therewith." (67 Ill. App. 2d 315, 325.)

This court also said:

"Even looking at the evidence most favorable for Kelly, we believe he should be held responsible, on a theory of negligent misrepresentation. He admits that his was the responsibility of seeing that purchasers received a clear title, and that he at no time made an effort to check if the conditions set forth in either the contract or warranty deed were fulfilled." 67 Ill. App. 2d 315, 324.

The plaintiffs here clearly relied on a representation made for their guidance and suffered a harm. They were justified in believing that the real estate agent's statements were truthful and accurate. A real estate broker and his agents are in the business of supplying information with regard to real estate in expectation of people acting on that information.

In *Glanzer v. Shepard*, 233 N.Y. 236, 135 N.E. 275 (1922), the defendants, public weighers, were found to owe a duty to the buyer of beans as well as to the seller of the beans to weigh carefully. The plaintiffs were buyers of the beans from the seller. The seller had requested the defendant weighers to weigh the beans before delivery to the buyers. The defendants weighed the beans and certified the weight. The buyers accepted the certificate and paid for the amount certified. Upon resale of the beans, the plaintiffs found the weight of the beans to be less than was certified and brought suit against the defendants in the amount overpaid. Justice Cardozo found that the defendants had a duty towards both the buyer and the seller.

"The defendants, acting, not casually nor as mere servants, but in

pursuit of an independent calling weighed and certified at the order of one with the very end and aim of shaping the conduct of another. Diligence was owing, not only to him who ordered, but to him also who relied." (233 N.Y. 236, 242, 135 N.E. 275, 277.)

The court noted that the defendants held themselves out to the public as "skilled and careful" in their calling. The court went on to say that the defendants were held liable for the careless performance of a service which service was intended to influence another's conduct.

*Glanzer* is distinguishable from the present case on its facts. *Glanzer* involved a public weigher and this case involves a real estate broker. Also, in *Glanzer* the weigher issued a certificate of weight, whereas in this case there was no certificate of sewer service. However, the certificate of the weigher amounted to a representation as to the weight of the beans and the words of the real estate agent were a representation as to the availability of sewer service. As Justice Cardozo pointed out: "We must view the act in its setting, which will include the implications and the promptings of usage and fair dealing." (233 N.Y. 236, 240-41, 135 N.E. 275, 276.) A real estate broker holds himself out to the public as knowledgeable in the field of real estate. The courts have found that purchasers may justifiably rely on the representations made by real estate brokers. It would appear then that real estate brokers should have a duty to insure that their representations are truthful and accurate.

An agent, as a general rule, is not responsible for the fraudulent representations of his principal unless he knows or should know that it was a misrepresentation. (Restatement (Second) of Agency §348 (1958); 3 Am. Jur. 2d *Agency* §300 (1962).) In general, however, "if the agent is under a duty to third persons as well as to his principal, a breach of his duty to such third persons will render the agent liable to them." (3 Am. Jur. 2d *Agency* §300 (1962).) If an agent commits an act which is tortious with respect to a third person, he will be liable for the tort and if he was acting within the scope and authority of his employment then his principal will also be liable. (*Stumpf v. Lawrence*, 4 Cal. App. 2d 284, 40 P.2d 920 (1935).) If an agent makes a fraudulent representation, he is liable for the tort as is his principal, even though the principal may not have authorized the misrepresentation or known of it. *Stumpf; Newcomb v. Title Guarantee & Trust Co.*, 131 Cal. App. 329, 21 P.2d 456 (1933).

The plaintiffs could have charged defendant realtors with violating the fraudulent advertising act (Ill. Rev. Stat. 1973, ch. 121½, par. 157.21a *et seq.*).