**HAVOCO OF AMERICA, LTD., a Delaware Corporation, Plaintiff-Appellant,**

v.

**HILCO, INC., a Tennessee Corporation, Elmer C. Hill, and Sumitomo Shoji America, Inc., a New York Corporation, Defendants-Appellees.**

No. 83–1805.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 20, 1984.

Decided April 13, 1984.

Robert S. Atkins, Freeman, Atkins & Coleman Ltd., Chicago, Ill., for plaintiff-appellant; Susan B. Padove, Chicago, Ill., of counsel.

Victor G. Savikas, Karon, Morrison & Savikas, Ltd., Ronald Butler, Butler, Rubin, Newcomer & Saltarelli, Chicago, Ill., for defendants-appellees.

Before CUMMINGS, Chief Judge, CUDAHY, Circuit Judge, and FAIRCHILD, Senior Circuit Judge.

CUDAHY, Circuit Judge.

Plaintiff-Appellant, Havoco of America, Ltd. ("Havoco"), brought a diversity suit against defendants Elmer C. Hill and Hilco, Inc. ("Hilco") and Sumitomo Shoji America, Inc. ("Sumitomo"), alleging fraud and a conspiracy to defraud Havoco in inducing it to assign its coal supply contract with the Tennessee Valley Authority ("TVA") to a third party, R & F Coal Company ("R & F Coal"). Havoco had previously sued R & F Coal for breach of the assignment contract. The district court dismissed Havoco's claims primarily on the grounds that Havoco's current fraud suit was barred by Havoco's prior suit against R & F Coal on the breach of contract claim. The district court's jurisdiction was based on diversity of citizenship, 28 U.S.C. § 1332, and we have jurisdiction pursuant to 28 U.S.C. § 1291. We reverse.

I.

In February 1975, Havoco, a marketer of coal, entered into a contract with the TVA to supply certain amounts of coal to the TVA over a ten-year period. In connection with this coal supply contract, Havoco entered into several related agreements with other parties, including a coal purchase agreement with R & F Coal and an agreement with Sumitomo to provide Havoco with financing for the Havoco-TVA contract.

Havoco's coal supply contract with the TVA provided that either party had the right to demand renegotiation of the price of the coal within six months after execution of the contract. The TVA exercised this right in August 1975. At that time, defendant Hill, who was an officer and director of Havoco, was responsible for conducting the price negotiations with the TVA. Defendant Hilco provided office space, clerical and secretarial assistance and other services to Havoco in connection with the negotiations between Havoco and the TVA.

These negotiations continued unsuccessfully for about six months. At last, in February 1976, Havoco orally agreed to assign its TVA contract to R & F Coal and entered into a written assignment contract on March 19, 1976. Pursuant to this assignment (the "Assignment Contract"), R & F Coal agreed to pay certain sums to Havoco, based on the coal sales which R & F Coal would make to the TVA. In April 1977, R & F Coal and the TVA entered into a short-term coal sales contract, and, in

June 1977, a long-term sales contract, which is still in effect.

In 1976, before the Assignment Contract was executed, R & F Coal sued Havoco, Sumitomo and others in the Northern District of Illinois alleging that Havoco had failed to make timely payments to R & F Coal under a prior agreement on invoices totalling more than $2.6 million. Havoco alleges that that lawsuit was a sham, intended to induce Havoco to assign its TVA coal supply contract to R & F Coal.

Also in 1976, M/G Transport Services, Inc. sued Havoco alleging that Havoco had breached a coal transportation contract. Havoco's president, Mr. Van Der Muelen, stated in subsequent deposition testimony that it was during later discovery for this *M/G Transport* case that he had become aware of meetings in 1976 between Hill, R & F Coal and M/G Transport. The participants at those meetings supposedly discussed buying out Havoco's interest in the TVA coal contract.

On January 10, 1978, Havoco instituted a suit against several defendants, including Hill, Hilco, R & F Coal, and R & F Coal's parent corporations, claiming breach of the Assignment Contract, fraud and deceit, violation of the Sherman Antitrust Act, violation of the Illinois Antitrust Act, unfair competition, breach of fiduciary duties and tortious interference with contractual relations. *Havoco of America, Ltd. v. R & F Seaway Coal, Seaway River Terminal, Shell Oil, Hilco, Inc. and Hill,* No. 78 C 83 (N.D.Ill.). After dismissal of the federal antitrust claim, the pendent state claims were also dismissed following the guidelines of *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), because there was a lack of diversity between Havoco and Shell. On October 19, 1978, the district court's order dismissing the state law claims against Hill, Hilco and R & F Coal was clarified as being "without prejudice." This court later affirmed the dismissal of the federal antitrust claim. *Havoco of America, Ltd. v. Shell Oil Co.,* 626 F.2d 549 (7th Cir.1980).

Meanwhile, Havoco filed suit in the District Court for the Eastern District of Tennessee after dismissal in the Northern District of Illinois (of No. 78 C 83) but before the affirmance of that dismissal by the Seventh Circuit. This suit in Tennessee named only R & F Coal as a defendant and alleged that R & F Coal had breached its contractual obligation by failing to pay the royalties or commissions agreed to in the March 19, 1976 Assignment Contract. After transfer to the Northern District of Illinois (No. 79 C 75), this case was eventually dismissed pursuant to a stipulated settlement, dated December 27, 1979, between Havoco and R & F Coal, providing for a payment of $1,966,083.40 by R & F Coal to Havoco and the execution of a covenant not to sue between those parties. In the covenant not to sue, Havoco agreed to give up all claims it might have against R & F Coal for the breach of the Assignment Contract. Havoco, however, expressly reserved any other causes of action it might have against any party other than R & F Coal and its parent corporations.

Finally, on January 27, 1981, Havoco filed the current suit against Hill, Hilco and Sumitomo alleging that the defendants had fraudulently induced Havoco to enter into the Assignment Contract and had conspired with R & F Coal to eliminate Havoco illegally as a major coal supplier to the TVA. Specifically, Havoco alleged that Hill, Sumitomo and R & F Coal made numerous misrepresentations to the TVA during the course of the price negotiations reflecting negatively on Havoco's financial situation, ability to meet the requirements of the contract and desire to remain as a supplier. The TVA apparently concluded that it would be unable to reach a satisfactory agreement with Havoco, allegedly as the result of these misrepresentations. R & F Coal brought the first lawsuit in 1976, tying up Havoco's assets, allegedly in order to put further pressure on Havoco to force it to assign the TVA contract to R & F Coal. Sumitomo allegedly breached its contract with Havoco by failing to provide Havoco with a revolving letter of credit, thereby impairing Havoco's financial viabil-

ity. Havoco alleged that because of these improper dealings, it was forced to enter into the Assignment Contract, thus losing the opportunity to make substantial profits from the TVA coal supply contract. In addition, Havoco claimed that, after the Assignment Contract was executed, both Hill and Sumitomo became agents of R & F Coal and have received substantial payments from R & F Coal.

Thus, Havoco did not allege that the defendants made misrepresentations to Havoco, which is the more typical situation; instead, it claimed that misrepresentations were made to third parties which frustrated Havoco's ability to conclude a satisfactory agreement with the TVA. By these means, Havoco was allegedly forced to enter into the Assignment Contract due to circumstances which the defendants, in combination with R & F Coal, wrongfully conspired to create. While these circumstances did not, as noted, comprise the usual fraud situation, we have no difficulty in treating these allegations as constituting a claim for fraud by Havoco.

Havoco specifically claimed conspiracy to defraud, tortious interference with contractual relations, common law fraud and deceit, breaches of fiduciary duty by defendants Hill and Sumitomo and breach of contract by Sumitomo. Havoco requested several types of legal and equitable relief, including compensatory damages in the amount of $213.8 million and substantial punitive damages.

Hill and Hilco moved to dismiss the complaint and Sumitomo moved for summary judgment on the ground that Havoco had affirmed the Assignment Contract, and thus waived its fraud claim, by suing R & F Coal and then accepting a settlement payment. The district court granted the motion to dismiss the claims against the defendants except for the breach of contract claim against Sumitomo, which was subsequently dismissed pursuant to the parties' stipulation.

## II.

Three issues are presented in this appeal. The first of these is whether Havoco had knowledge of the fraud at the time it brought the breach of contract suit against R & F Coal. Second, we must decide whether Havoco, as a matter of law, waived its claim for fraud and misrepresentation by affirming, through suit and settlement for almost two million dollars, its Assignment Contract with R & F Coal. Finally, and closely related to the second issue, we must determine whether waiver depends on Havoco's actual intent and is thus a disputed factual issue not appropriate under these circumstances for resolution on summary judgment.

We think the district court correctly found that there was no issue of material fact on the first issue concerning Havoco's knowledge of the alleged fraud. Havoco continues to rely, although far less emphatically than in the district court, on its contention that it did not have full knowledge of the fraud until mid-1980 when some TVA documents were recovered through Freedom of Information Act requests. Appellants' Reply Brief at 10. However, Havoco demonstrated in its complaint filed in the Northern District of Illinois on January 10, 1978, that it then had substantially all the information which it now alleges provides the basis for the present claims of fraud, misrepresentation and breach of fiduciary duty.[1] Havoco therefore clearly

---

1. In addition to other claims, Havoco made the following allegations in its January 1978 complaint:

26. During January, February, and March 1976, R & F Coal, Hilco, Inc., and Hill, together with others, had a series of conversations among each other, and at least one meeting, during which they conspired and agreed to induce plaintiff to assign its 1975 TVA contract to R & F Coal in exchange for, *inter alia,* payments which R & F Coal would promise to make to plaintiff. R & F Coal, Hilco, Inc., and Hill intended, however, that the promised payments would not be made.

\* \* \* \* \* \*

47. In January, February and March, 1976, during the course of those renegotiations, Hill and others induced plaintiff to assign its TVA contract to R & F Coal so that R & F Coal could negotiate directly with the TVA. Unbeknownst to plaintiff, during this same period

pursued its breach of contract claim without pursuing its fraud claims after it had knowledge of the fraud.

Having resolved this issue as to knowledge, we must consider the second issue—whether Havoco waived its fraud claim as a matter of law. Defendants assert that Havoco waived its fraud claim by affirming the contract through suing exclusively for breach of contract after it had knowledge of the fraud. At oral argument, counsel for Hill and Hilco took the modified position that the waiver derived specifically from the subsequent settlement and Havoco's acceptance of benefits under the Assignment Contract. Havoco responded by relying on its specific reservation of its right to sue other parties in the 1979 settlement agreement with R & F Coal. Further, Havoco asserted that the 1978 lawsuit and subsequent settlement cannot be construed as a waiver of its fraud claim because the 1976 Assignment Contract had been partially performed and, under these circumstances, an action to recover damages for fraud in the inducement may be maintained subsequent to recovery in a suit based on the contract itself. This situation is to be distinguished from the situation where the contract is fully executory at the time of affirmance.

■ Whether the Assignment Contract was partially or fully performed or fully executory at the time Havoco learned of the fraud is highly relevant to a determination of Havoco's right to sue for both fraud and breach of contract. The general rule is that a party which continues to perform a partially executed contract, particularly where it would be prejudicial to discontinue performance, does not waive its right to damages for fraud.[2] The parties disagree considerably as to the characterization of the performance at that time, although the basic facts are uncontested. Havoco had fully performed its obligations under the Assignment Contract since the only performance required of it was the execution of the assignment—accomplished in March 1976. R & F Coal, on the other hand, had apparently not performed its obligations to Havoco at all under the Assignment Contract because it did not pay any commissions to Havoco until the settlement payments were made in late 1979, although it had performed its obligation in supplying coal directly to the TVA. The record here does not disclose whether there would have

Hill—despite his fiduciary relationship to plaintiff—secretly attempted to exercise his influence to reduce the aggregate amount of consideration to be offered to plaintiff in exchange for assignment of its TVA contract to R & F Coal. Also unbeknownst to plaintiff, during this same period Hill secretly entered into an agreement with R & F Coal pursuant to which he was to be designated as that company's agent and representative in connection with the base price renegotiations with the TVA in the event that Hill and others succeeded in persuading plaintiff to assign its 1975 TVA contract to R & F Coal.

48. On February 20, 1976, plaintiff orally agreed to assign its TVA contract to R & F Coal. The very same day, although still an officer and director of plaintiff but without ever consulting with or giving notice to plaintiff, Hill accepted appointment as an agent and representative of R & F Coal for the purpose of renegotiating base prices with the TVA with respect to the assigned contract.

⁎ ⁎ ⁎ ⁎ ⁎ ⁎

50. As alleged above, while still serving as plaintiff's officer, director, agent, and representative, Hill commenced a course of conduct which cost plaintiff its 1975 contract with the TVA, and which has cost plaintiff the commissions to which it is entitled pursuant to its March 19, 1976, contract with R & F Coal.

Complaint in No. 78 C 83, Appellants' Appendix at 11–12. Havoco may have had knowledge of the alleged fraud before the filing of the complaint in No. 78 C 83, but this does not appear in the present record. It may be that some earlier date can be established on remand.

2. "The great weight of authority … holds that where the defrauded party has performed a contract in part before he learns of the fraud he may continue to perform and still recover damages for the fraud." *Chester v. McDaniel*, 264 Or. 303, 504 P.2d 726, 727 (1972). In *Ankeney v. Brenton*, 214 Iowa 357, 238 N.W. 71, 74–75 (1931), the court stated, "if the contract had been wholly performed before appellant learned of the alleged fraud, there could have been a recovery for damages thereafter. Also if the contract were partly performed and appellant could not retreat without injury, he could have waived rescission and proceeded to recover damages."

been prejudice from discontinuance of performance or attempted rescission by Havoco at the time that Havoco learned of the fraud in the present case.[3]

The rationale of the rule implying waiver by affirmance is that, if the plaintiff will be injured by performance of the contract because of the pre-existing fraud, failure to disaffirm or rescind the contract will result in purely self-inflicted injuries, and there should be no recovery for damages in such a case. *See Graham v. First American National Bank,* 594 S.W.2d 723, 726 (Tenn. Ct.App.1979); *Ankeney v. Brenton,* 214 Iowa 357, 238 N.W. 71, 75 (1931). Another reason for this rule is that a party who affirms the contract after learning of the fraud may be said not to have relied on the fraudulent misrepresentation and thus an essential element of fraud (reliance) is lacking. In addition, a plaintiff who, with knowledge of the fraud, waits to sue while the other party performs is speculating as to the outcome of the contract by deciding whether to affirm or rescind the transaction after determining which result is the more beneficial.[4] Judicial policy has aimed at discouraging such speculation by refusing to allow fraud damages after the plaintiff has affirmed the contract.[5] The question whether the contract is executory or partially performed goes, of course, to the practicability of rescission or disaffirmance.

Because federal jurisdiction is based on diversity of citizenship, the case before us is clearly governed by Illinois law under the *Erie* doctrine. The district court decided this case by interpreting Illinois law as treating waiver of fraud damages by affirmance of the contract as an implied-in-law waiver, established by the conduct of

---

3. The Assignment Contract provides that if R & F Coal did not fulfill its obligations to the TVA under the terms of the Havoco-TVA contract (Havoco's rights under which R & F acquired by means of the Assignment Contract), then the assignment would itself be cancelled and Havoco could resume its contract with the TVA. Assignment Contract ¶ 5, Plaintiff's Exhibit D, Complaint filed January 28, 1981. It is therefore possible that, if Havoco had cancelled the Assignment Contract by seeking rescission, Havoco would have been obligated to perform under the original TVA contract—something which it might not have been in a position to do. This is an important factor in determining whether it would have been prejudicial or impractical for Havoco to disaffirm the Assignment Contract at the time it learned of the fraud.

4. [T]o allow a person who has discovered the fraud while the contract is still wholly executory to go on and execute it, and then sue for the fraud, looks very much like permitting him to speculate upon the fraud of the other party. It is virtually to allow a man to recover for self-inflicted injuries.
*Thompson v. Libby,* 36 Minn. 287, 31 N.W. 52, 53 (1886), *quoted in Benz v. Zobel,* 255 Wis. 542, 549, 39 N.W.2d 713, 716 (1949).

5. There was an even clearer reason for the rule in jurisdictions where the measure of damages for fraudulent misrepresentation was out-of-pocket loss rather than loss of the benefit of the bargain. In *Simon v. Goodyear Metallic Rubber Shoe Co.,* 105 F. 573 (6th Cir.1900), the plaintiff went forward with performance of the contract in full knowledge of the fraud. The court denied recovery and said:

> The contract was not obligatory by reason of the deceit by which it was procured. If it had been fully executed before full knowledge of the deceit which made it nonobligatory, the plaintiff's remedy would have been in an action for the deceit. In such an action the measure of damages would not be the value of the contract if the representations which induced it had been true, but the loss which was incurred by reason of its execution. What the plaintiff might have gained would not have been recoverable, but only the loss which he sustained by its actual execution.
>
> * * * * * *
>
> This [out-of-pocket expense rule] being the rule of damages in an action by one who has been fraudulently induced to make either a contract of sale or purchase, it must follow that if one, after full knowledge of the fraud and deceit by which he has been induced to make a sale of property, goes forward and executes it notwithstanding such fraud, the damage which he thereby sustains is voluntarily incurred.... If the fraud be discovered while the contract is wholly executory, the party defrauded has the option of going on with it or not, as he chooses. If he executes it, the loss happens from such voluntary execution, and he cannot recover for a loss which he deliberately elected to incur.

*Id.* at 579. Thus, there were reasons for the waiver rule where damages were calculated on an out-of-pocket basis which apparently would not apply where damages included loss of the benefit of the bargain.

the parties. However, the pattern of recent Illinois decisions is far from conclusive with respect to the impact of partial or substantial performance on the doctrine of waiver of fraud damages by affirmation of the contract.

The leading Illinois Supreme Court case of *Eisenberg v. Goldstein*, 29 Ill.2d 617, 195 N.E.2d 184 (1963), *cert. denied*, 377 U.S. 964, 84 S.Ct. 1645, 12 L.Ed.2d 735 (1964), involved alleged fraud and misrepresentation in the sale of an apartment building and a request for rescission of the deed rather than the recovery of damages. The court held that there was no actionable fraud because the plaintiffs had inspected the property for themselves and thus had relied upon their own judgment rather than upon representations made by the defendants. The court, however, also observed that the plaintiffs had failed to complain promptly of the alleged misrepresentations upon discovery of the facts. They had continued in possession of the property collecting rents, managing the property and making payments on the contract. They sought to rescind the deed a year after the land purchase had closed and possession had been taken. In this connection the court stated:

> A person who has been misled by fraud or misrepresentation is required, as soon as he learns the truth, to disaffirm or abandon the transaction with all reasonable diligence, so as to afford both parties an opportunity to be restored to their original position. If, after discovering the untruth of the representations, he conducts himself with reference to the transaction as though it were still subsisting and binding, he thereby waives all benefit of relief from the misrepresentations.

*Id.* at 622, 195 N.E.2d at 187. In *Eisenberg*, therefore, the Illinois Supreme Court, apparently in an alternative holding, adopted a strong waiver by conduct rule but in a circumstance where the court implied that the plaintiffs could have rescinded the sale if they had acted promptly upon learning the fraudulent aspects of the defendants' representations.

In *Bulley & Andrews, Inc. v. Symons Corp.*, 25 Ill.App.3d 696, 323 N.E.2d 806 (1st Dist.1975), a building contractor sued its client for extra work, alleging that the client had fraudulently concealed the true nature of the work. The *Bulley & Andrews* court thus applied the *Eisenberg* waiver rule to a contract which was partially performed before the plaintiff knew of the alleged fraud but did not discuss this distinction, simply noting, "[h]ad plaintiff promptly notified defendant, the parties could have resolved the matter at that time, either by settlement or in the courts." *Id.* at 702, 323 N.E.2d at 811. The Illinois Appellate Court in *Bulley & Andrews* thus also relied on the underlying rationale for the waiver rule—that the plaintiff should avoid fraud damages by bringing the fraud allegations seasonably to the attention of the defendant.

The defendants also rely on *Kaiser v. Olson*, 105 Ill.App.3d 1008, 61 Ill.Dec. 624, 435 N.E.2d 113 (1st Dist.1982), which was decided after the district court's decision in the present case, where buyers of stock discovered the alleged fraud within months after signing a purchase agreement "while their performance was still largely executory," *id.* at 1015, 61 Ill.Dec. at 630, 435 N.E.2d at 119. Thereafter, the buyers did not object and continued to hold the stock and make payments on it for three more years. The buyers did not bring an action for rescission damages for fraudulent misrepresentation until the sellers sued them for the purchase price and the buyers counterclaimed. *Kaiser* is thus somewhat inconclusive because the contract there was largely, although not entirely, executory at the time the buyers learned of the fraud. On the other hand, the court also relied heavily on the long period during which the plaintiffs continued performance after discovery of the fraud and so speculated on the outcome of the transaction in the interim.

Havoco, for its part, relies on *Vance Pearson, Inc. v. Alexander*, 86 Ill.App.3d 1105, 1112, 42 Ill.Dec. 204, 209, 408 N.E.2d

782, 787 (4th Dist.1980), where the plaintiff successfully recovered punitive damages for fraud when the defendant promised to complete construction by a certain date knowing the promise to be false. The falsity of the representation did not become known to the plaintiff until the work was well under way. The defendant argued in *Vance Pearson* that, because the plaintiff permitted the defendant to complete the contract, it had waived any cause of action for fraud under the theory of *Bulley & Andrews* and *Eisenberg*. In dictum, the *Vance Pearson* court said that "waiver would not exist here because rather than seeking to rescind the contract as in the cited cases, plaintiff wishes to stand by the contract after discovery of the fraud." *Id.* at 1112, 42 Ill.Dec. at 209, 408 N.E.2d at 787.

Havoco relied on *Vance Pearson* in the district court solely for the proposition that the waiver rule of *Eisenberg* applies only where the suit is for rescission and not where there is a suit for fraud damages. But the *Vance Pearson* dictum also supports the proposition that where the alleged fraud is discovered well into the performance of the contract and rescission is difficult, the plaintiff may choose to stand by the contract without waiving the right to recover fraud damages. *See also Anderson v. Wise*, 345 S.W.2d 803, 806 (Tex. Civ.App.1961), *rev'd on other grounds*, 359 S.W.2d 876 (Tex.1962). *Cf. Bormann v. Simpson*, 45 Ill.App.3d 176, 180, 3 Ill.Dec. 965, 969, 359 N.E.2d 824, 828 (5th Dist. 1977) (even where it is impractical to rescind an estate sale transaction, purchaser, although fraudulently induced into sale, cannot recover benefit of the bargain damages).

Several Illinois appellate decisions contradict the general rule that a plaintiff cannot affirm the contract and recover fraud damages if rescission of the contract is still practicable at the time of affirmance. These Illinois cases hold that a plaintiff who has been fraudulently induced to purchase real estate through the seller's misrepresentations can elect whether to seek rescission of the sales contract or to

affirm the contract while seeking damages for the fraud. For example, in *Lyons v. Christ Episcopal Church*, 71 Ill.App.3d 257, 27 Ill.Dec. 559, 389 N.E.2d 623 (5th Dist.1979), the court stated:

> The general rule with respect to fraudulent misrepresentation in the sale of real estate is that the contract is merely voidable, not void, at the option of the injured party. The same rule must obtain where, as here, there has been a negligent misrepresentation made by the seller. The defendant may not choose the plaintiffs' remedy. They are free to honor the contract and pursue an action in tort to compensate for their injury.

*Id.* at 260, 27 Ill.Dec. at 561–562, 389 N.E.2d at 625–26 (citations omitted). Similarly, in *Rotello v. Scott*, 95 Ill.App.3d 248, 50 Ill.Dec. 784, 419 N.E.2d 1233 (2d Dist. 1981), the court held that the plaintiffs' refusal to rescind the sale contract after discovering the fraud and the sellers offered to do so did not constitute a waiver of their right to recover for the fraud. *Id.* at 252, 50 Ill.Dec. at 787, 419 N.E.2d at 1236 (quoting the above passage from *Lyons*).

Finally, Havoco relies heavily upon the recent decision of the Illinois Appellate Court in *Lee v. Heights Bank*, 112 Ill. App.3d 987, 68 Ill.Dec. 514, 446 N.E.2d 248 (3d Dist.1983), *petition for leave to appeal denied*, No. 58306 (Ill.Sup.Ct. Oct. 4, 1983), decided after the district court's disposition of the case before us. In *Lee*, the plaintiff was allegedly induced to co-sign a note, which went into default, by the bank's fraudulent misrepresentations that the note was secured by collateral. The plaintiff sued the bank for fraud even though he had earlier renewed his original note, made payments on the note and sued his co-maker on the note. The bank argued that the plaintiff, by his earlier acts affirming the contract, had waived his claim as to the fraud about which he had knowledge when he affirmed the contract. In discussing the elements of waiver the court said:

> An additional and essential element is that the injured party intend to affirm the contract *and* intend to abandon his

right to recover damages for the loss resulting from the fraud. The added element of intent places a heavier burden upon the party asserting the waiver. The mere passage of time or delay in bringing suit, without more, does not result in waiver.

*Id.* at 995, 68 Ill.Dec. at 520, 446 N.E.2d at 254.[6] The *Lee* court distinguished *Eisenberg* primarily on the ground that the latter was a suit in equity to rescind a deed and "has nothing to do with waiver as applied to legal actions." *Id.* On the other hand, the *Lee* court agreed with *Kaiser* to the extent that a fraud claim might be waived. However, *Lee* makes it clear that the party asserting the defense of waiver must prove that the plaintiff actually intended to waive the fraud claim.

■ Counsel for Hill and Hilco at oral argument sought to distinguish *Lee* from the present case on the grounds that the plaintiff there derived no benefit from his acts of affirmance but rather assumed additional obligations under the contract. In contrast, Havoco's act of affirmance led to its acceptance of almost two million dollars in settlement of its breach of contract suit. The only difficulty with this reasoning is that, at the time Havoco received the benefit of the settlement and as part of the settlement, Havoco expressly reserved its claims against parties other than R & F Coal and so acceptance of the benefit specifically excluded waiver of those rights. We also note that *Lee* is similar to the instant case in that one of the acts of affirmance there was a lawsuit brought on the defaulted note which is analogous to the suit brought here for unpaid commissions.[7]

In addition, we take note of certain decisions not based on Illinois law. In *Talcott v. Friend,* 179 F. 676 (7th Cir.1910), *aff'd,* 228 U.S. 27, 33 S.Ct. 505, 57 L.Ed. 718 (1913), the plaintiff filed a claim against the defendants' bankruptcy estate for the price of certain goods previously sold to the defendants. The plaintiff's claim was allowed and he received his share under a composition. This court held that the bankruptcy proceedings did not bar a subsequent suit alleging deceit by the defendants in obtaining the goods. The court said:

> So there was no inconsistency in plaintiff's realizing all he could from defendants' explicit promise to pay, and afterwards demanding damages for having been deceived into accepting such a poor obligation in exchange for his goods, because the defendants were sued in two separate and distinct capacities. That the promisors in the contract case and the fraud doers in the deceit case were the same persons was an incident immaterial to either case.

179 F. at 680. And a somewhat dated but nonetheless relevant A.L.R. annotation states:

> The great majority of the cases support the rule that where the defrauded party has in part, or at least in substantial part, performed the contract at the time of discovering the fraud, he may go on with performance and also recover or have the appropriate allowance of damages. And the decisions are very strongly to the effect that there is no waiver by the mere going on with the contract if, when the fraud was discovered, a stopping or abandonment of performance was not reasonably practicable, or, to

**6.** In *Bennett v. Mason,* 572 S.W.2d 756, 759 (Tex.Civ.App.1978), the court said: "Ratification and waiver are generally fact issues and the burden of proof is on the party seeking to establish same. Moreover, ratification and waiver both involve 1) knowledge of the fraud, and 2) voluntary intentional choice exercised in the light of such knowledge."

**7.** The law is well settled that a defrauded purchaser upon discovery of the fraud may elect

to rescind the contract or may affirm the contract and sue for damages. The action for damages is an affirmance or ratification of the contract and a waiver of the right to rescind, but in no sense is it a waiver of the right to recover all the damage caused by the fraud.

*Chester v. McDaniel,* 264 Or. 303, 504 P.2d 726, 727 (1972).

express a similar idea, if the defrauded party was then in a situation from which he was unable to recede without prejudice.

$$* \quad * \quad * \quad * \quad * \quad *$$

The general rule which prevails in most jurisdictions [citing several Illinois decisions] is that a party defrauded in the making of a contract who discovers the fraud after having partly performed may continue with performance and also have his action in damages.

Annot., 13 A.L.R.2d 807, 812, 815 (1950) (footnotes omitted).

In *Bankers Trust Co. v. Pacific Employers Insurance Co.*, 282 F.2d 106 (9th Cir.1960), *cert. denied*, 368 U.S. 822, 82 S.Ct. 41, 7 L.Ed.2d 27 (1961), the plaintiff was permitted under Nevada law to pursue successfully an arbitration procedure under a fire insurance policy to collect the cash value of the property destroyed. He subsequently sued the insurance company on a fraudulent misrepresentation theory for the face amount of the policy, which was considerably in excess of the value of the property destroyed. The trial court granted summary judgment for the insurer primarily on grounds that the fraud damages had been waived by pursuing the prior arbitration procedure and accepting payment of the cash value of the property.

The Ninth Circuit reversed, finding neither an intentional waiver nor a waiver implied by law. The court said that, if intention to waive is to be implied from conduct, the conduct should indicate the intention clearly. In addition, as to a waiver implied by law, the court noted that the plaintiff had fully performed the contract and the loss was complete before the alleged fraud was discovered. "At that point [when the building burned] the [plaintiff] had several alternative remedies available, and its choice of the two-step remedy was not a waiver of the fraud." 282 F.2d at 112.

Although *Bankers Trust* was decided under Nevada law, there is no reason to think that Nevada law differs materially from that of Illinois. *Bankers Trust*, where the

issue was waiver by affirmance through the pursuit of legal remedies based on the contract, is factually quite similar to the case before us. As in *Bankers Trust*, Havoco is pursuing a two-step remedy. It sued R & F Coal under the Assignment Contract for unpaid commissions and now seeks to collect consequential damages for fraud from the participants who allegedly helped through fraud to bring about the assignment of the TVA contract. The *Bankers Trust* court also relied on the fact that the contract there was not executory but had been fully executed by the plaintiff—facts markedly similar to those of the instant case.

The defendants and the district court attempted to distinguish *Bankers Trust* primarily on the grounds that it applied Nevada law rather than Illinois law. But we think that both Nevada and Illinois law of waiver are consistent with the general law followed in most jurisdictions. *See supra* Annot., 13 A.L.R.2d 807. Illinois law is not so distinctive on this issue that the Illinois Supreme Court would be precluded from reaching the *Bankers Trust* result on the facts of that case.

*Eisenberg*, which is a case involving rescission of an entire transaction and is distinguishable as such, is the only relatively modern Illinois Supreme Court authority on waiver which has come to our attention. In addition, *Eisenberg* involved a situation where it apparently would have been easy for the plaintiffs to disaffirm and, therefore, where their affirmance can be construed as a waiver. *Eisenberg* has been applied by the Illinois Appellate Court to damage claims in *Bulley & Andrews* and *Kaiser* and, at least in *Bulley & Andrews*, to contracts which had been partially performed. In light of *Lee*, however, we think these cases are an inadequate basis on which to find waiver as a matter of law in the case before us. *Lee* is like the instant case in that the contract affirmance consisted, in part at least, of a lawsuit based on the contract. Yet the court was unwilling to find waiver as a matter of law and

concluded that intent to waive was an issue of fact properly committed to the jury:

> Without proof of intent, a party who relies on the statute of limitations and files his action within that time could unwittingly relinquish his right to sue through no fault of his own. Before we will permit such a result, the party who raises the defense of waiver must prove that the plaintiff intended to give up his right to sue.

112 Ill.App.3d at 995, 68 Ill.Dec. at 520, 446 N.E.2d at 254.

As noted, one of the defendants at oral argument sought to distinguish *Lee* on the grounds that the alleged acts of waiver did not involve benefits to the plaintiff. This analysis would find waiver in the case before us not in the *bringing* of the suit on the contract, but in the *settlement* of the suit for a substantial sum. Also as noted, this approach seems to founder on the express reservation of claims against other participants as part of the settlement agreement. There is, in addition, no apparent reason why settlement of a suit between two parties should affect the potential liability of *third parties* who were not involved in any way in the settled law suit. This factor should distinguish the situation before us from the other Illinois cases cited and argued by the parties.

We also note that the two cases, other than *Lee*, involving alleged waiver by pressing a claim based on the contract— *Talcott v. Friend* and *Bankers Trust* —both declined to find waiver as a matter of law. These cases did not involve Illinois law as such, but they are consistent with the principles of waiver as articulated by the Illinois courts. The principles which emerge from the Illinois decisions indicate that the plaintiff can elect the remedy—either rescission or suit for damages on the contract and for the fraud. *Eisenberg* creates the additional rule that, if the plaintiff discovers the fraud while the contract is capable of rescission, then the plaintiff

must seek rescission promptly in order to avoid the creation of otherwise avoidable losses. This rule serves the policy of avoiding the creation of additional damages and of refusing to reward the plaintiff who speculates on the outcome of a transaction. We have no reason to believe, however, that the Illinois Supreme Court would find waiver as a matter of law if it were presented with a contract that had been substantially performed, where the act of affirmance had consisted of a suit for contract damages and where either disaffirmance or rescission was difficult or impracticable or the plaintiff might be prejudiced by disaffirmance. *Cf. Vance Pearson v. Alexander, supra.* In fact, the practicability of disaffirmance by Havoco in 1978 is one issue which should be pursued on remand.[8]

 It seems clear that a plaintiff can sue simultaneously both for fraud and on contract claims. *Allen v. Henn*, 197 Ill. 486, 495, 64 N.E. 250, 253 (1902); *Brumbach v. Flower*, 20 Ill.App. 219, 221 (1886) ("a party defrauded in a contract may affirm it in the most unequivocal way and yet maintain an action to recover damages for the fraud, by which he was induced to enter into such contract"). The defendants thus rely on Havoco's failure to bring both suits at the same time as the conduct which constituted the waiver. Sumitomo Brief at 21–22. Support for this approach can be found in *Eisenberg, Bulley & Andrews* and *Kaiser*. But the real issue in those cases was not the mere delay in the defrauded party's bringing the fraud action. In *Eisenberg*, the contract was still capable of rescission at the time the plaintiffs discovered the fraud and, in addition, the court found that there was no fraud because the plaintiffs had not relied on the defendant's misrepresentations. In *Bulley & Andrews*, the losses were clearly avoidable by the plaintiff. Finally, in *Kaiser*, the buyers had not substantially performed at the time they learned of the fraud and yet they

---

**8.** In addition, further fact-finding may establish that Havoco had knowledge of the fraud some time before 1978. *See* n. 1 *supra.*

waited until after the business had failed and thus clearly speculated on the outcome of the contract before suing for fraud. The equities involved are, therefore, different from those present in this case where the contract was entirely performed by Havoco before Havoco discovered the fraud and it is unclear, on the record before us, whether Havoco could have rescinded the contract and whether any attempt by Havoco to rescind the contract in 1978 would have helped to avoid additional losses.

■ Our conclusion that Havoco did not waive its fraud claim as a matter of law leads as a corollary to our conclusion on the final issue—that, in the present case, waiver can only be found as a matter of intent. In *Lee,* the court made it clear that the burden of proof is on the defendant to establish that the plaintiff knowingly intended to relinquish his right to sue. 112 Ill.App.3d at 995, 68 Ill.Dec. at 520, 446 N.E.2d at 254. This conclusion is supported by the result in *Bankers Trust* and the A.L.R. Annotation cited previously. *See also Ankeney v. Brenton,* 214 Iowa 357, 238 N.W. 71, 75 (1931); *supra,* n. 6. A determination of intent is a fact question and this conclusion leaves in this case a disputed issue of material fact requiring reversal of the district court's disposition. We note, however, that there are several

factors which the district court might consider on a further motion for summary judgment which could lead to a finding of waiver. The issues of when Havoco first learned of the fraud, Havoco's speculation, if any, on the outcome of the TVA–R & F Coal contract and Havoco's ability to rescind the contract in 1978 after performance are among these factors. In addition, the length of time which elapsed between the 1978 action between Havoco and R & F Coal and the fraud suit filed in 1981 must be weighed as a factor in determining intent to waive the fraud claim.[9] Perhaps, if the parties supply additional facts by affidavit, the district court will be able to determine that there is no genuine issue as to Havoco's intent to waive. If not, then the determination of intent will be more appropriately submitted to the trier of fact.

The district court here seemed to have been prompted in part by considerations of putting an end to litigation, a concept generally associated more closely with res judicata and collateral estoppel than with waiver. Here the plaintiff prosecuted and settled his claims against one defendant while explicitly reserving his claims against the others. It does not seem to us that any principles of judicial economy or of avoidance of repetitious or vexatious suits have been clearly violated. Even if those princi-

---

9. The length of time between affirmance of the contract and suit for fraud has been considered as a factor in determining waiver. *See, e.g., Lee,* 112 Ill.App.3d at 996, 68 Ill.Dec. at 520, 446 N.E.2d at 254 (a lapse of seven months between termination of the prior suit on the contract and commencement of the fraud suit indicates intent not to waive fraud claim). *Cf. Kaiser v. Olson,* 105 Ill.App.3d at 1015, 61 Ill.Dec. at 630, 435 N.E.2d at 119 (delay of three years between buyers' discovery of the fraud and their countersuit to rescind the contract is indicative of intent to waive fraud claim). We note that in *Kaiser* the court relied on several factors which were clear on the record, including the largely executory nature of the contract at the time the buyers discovered the fraud and the buyers' speculation on the outcome of the contract, in granting summary judgment. The mere passage of time does not serve as an independent legal basis for dismissal, apart from the operation of the applicable statute of limitations or an equitable theory of laches involving detrimental reliance.

The present suit was instituted approximately six months after the dismissal of Havoco's federal antitrust claim against Shell Oil Company was affirmed by this court, as previously discussed. *Havoco of America, Ltd. v. Shell Oil Co.,* 626 F.2d 549 (7th Cir.1980). Havoco's fraud allegations, which had been presented as pendent state claims, had been dismissed without prejudice by the district court when it dismissed the federal antitrust claim. It is conceivable that Havoco did not immediately institute a fraud suit because it was awaiting the outcome of its appeal of the dismissal of the antitrust claim. Presumably if this court had reversed the dismissal and reinstated the antitrust claim, Havoco would have reinstated the pendent fraud claims, thus bringing all of these claims in one consolidated action. If this is correct, then Havoco's delay in bringing the fraud suit does not seem, at least without other circumstances being shown, to have been unreasonable.

ples have been infringed, this problem is beyond the scope of the waiver doctrine.

We therefore believe that summary judgment was inappropriately granted and that questions of fact as to Havoco's intent and the existence of waiver remain. The existence of waiver must here turn on Havoco's intent in bringing the lawsuit against R & F Coal after it knew of the alleged fraud. It is entirely possible that the finder of fact will determine that there is waiver on these facts or that Havoco knew of the fraud before 1978. *See supra* nn. 1, 8 & 9. But we think the Supreme Court of Illinois would not find intentional waiver as a matter of law, nor can we do so.

REVERSED AND REMANDED.